**Albert BRICK, Executor of the Estate of Parthenia R. Edwards, Plaintiff,**

v.

**BARNES–HINES PHARMACEUTICAL COMPANY, INC., et al., Defendants.**

Civ. A. No. 75–1945.

United States District Court, District of Columbia.

March 4, 1977.

Samuel Intrater, Washington, D. C., for plaintiff.

William J. Donnelly, Jr., Washington, D. C., for defendant Xttrium Laboratories, Inc.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

Plaintiff seeks to hold Xttrium Laboratories, Inc. responsible for the death of Parthenia R. Edwards, who died of a liver ailment after prolonged treatment with the drug isoniazid supplied by Xttrium. At a pretrial conference it developed there are no material facts in dispute. Defendant submitted a written statement of facts and moved for summary judgment. Plaintiff admitted the facts, indicating it had no further facts to submit except as to damages, upon defendant Xttrium conceding

for purposes of the motion that the drug isoniazid which it and others supplied to the Veterans Administration caused the death of Edwards.[1] Thus a pure question of law is presented on undisputed facts.

Xttrium Laboratories, Inc., a small drug manufacturer, in 1964 produced a standard generic drug called isoniazid which it supplied under two contracts with the Veterans Administration. The V.A. contracts specified the manner of both the production and labeling of the drug. Isoniazid is a well-known prescription drug used worldwide for many years in the treatment of tuberculosis. Its relative safety and effectiveness had, of course, been documented under the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 355, by another company which sponsored the drug. The only time Xttrium ever produced the drug was to meet the requirements of these V.A. contracts, and all of the tablets produced met specifications, were of good quality, and contained no defects.

Decedent was administered isoniazid over a period of 18 months by a V.A. hospital.[2] As a result she developed liver ailments, hepatitis and cirrhosis, which eventually caused her death.

Plaintiff apparently asserts two failures on the part of Xttrium. He claims that "said drug had not been properly tested for the dangerous and harmful side effects it would produce . . ." since "recent medicinal evidence has revealed that the use of such drug results in the development of liver failure . . . ." He also alleges, "That furthermore, they breached the implied warranty of merchantability, safety and fitness of such drug for medicinal use."[3] This second allegation (since there is no claim the drug was adulterated or inherently too dangerous to market) appears to be a claim that defendant did not sufficiently warn doctors of the dangers of isonaizid, and will be treated as such. Whether these alleged failings of defendant are pursued on tort or warranty theories, the analysis is the same. *See Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir. 1975).

[1] Isoniazid has been used for many years and in 1964–65 its potential harmful effects were known. "Research work on Isoniazid had been conducted on thousands of patients by hundreds of medical investigators prior to 1965 . . . ."[4] Specifically, it was admittedly well known that liver damage was among the adverse effects on humans.[5]

It is not unusual for drug hypersensitivity to develop in persons who have been receiving long courses of treatment. Fever is a common symptom, as well as . . . hepatitis, and others. "Tuberculosis," *Current Therapy*, p. 91 (1963). *See also*, Physician's Desk Reference, 1963, 1964, pp. 702–03; Goodman & Gilman, *The Pharmacological Basis of Therapeutics*, 1322–1327 (1965); "Tuberculosis," *Current Therapy*, pp. 111–114 (1965).

Given this background it is clear that Xttrium violated no duty to plaintiff in not conducting studies. The uncontested fact is that the danger of liver damage and hepatitis was generally known and identified, and that decedent fell victim to this previously established side effect of the drug.

 It is also clear that the warning given by Xttrium was adequate. Where prescription drugs are involved the manufacturer's duty to warn is limited to advising physicians of any potential danger.

---

1. See also plaintiff's Opposition to Motion for Summary Judgment (left with the Court 2/28/77 and filed 3/4/77): "Plaintiff admits the facts set forth in said Motion," but "Plaintiff denies that under the law defendant is relieved of liability."

2. Plaintiff has also filed an action, currently pending, against the United States for malpractice on the part of the personnel at the Veterans Administration Hospital.

3. Plaintiff's Third Amended Complaint ¶¶ 2, 4 (filed June 7, 1976).

4. Defendant's uncontested Statement of Material Facts Not in Dispute ¶ 3 (filed February 28, 1977).

5. *Id.*, ¶¶ 3, 4.

498

*See, e. g., Reyes v. Wyeth, supra,* at 1264. In doing so they must exercise a high degree of care. *Salmon v. Parke, Davis & Co.,* 520 F.2d 1359, 1362 (4th Cir. 1975). Here, defendant's label and warning complied exactly with the requirements of the FDA and V.A. While not conclusive, compliance with federal regulations is most pertinent, *id.,* particularly where the producer is neither the sponsor nor a promoter of the drug, but rather a smaller company merely compounding chemicals and printing labels consistent with FDA regulations. In addition, defendant's label is before the Court. Under the heading "Toxicity and Side Effects:" it is clearly stated that an occasional side effect is hepatitis. As plaintiff concedes, that of the known toxic effects of the drug "one of them was possible liver damage, and this was so stated on defendant's label."[6] Thus the side effect which caused plaintiff's death was admittedly clearly marked on the drug's label in accordance with federal regulations.

No material facts are at issue here, and there is nothing in the record requiring this case to be submitted to a jury. Defendant's motion for summary judgment is granted and the complaint is dismissed.

SO ORDERED.