Violet V. WHITTINGTON, Plaintiff,

v.

ELI LILLY AND COMPANY, Defendant.

Civ. A. No. 70-264.

United States District Court, S. D. West Virginia, Charleston Division.

Nov. 5, 1971.

Donald A. Lambert, Charleston, W. Va., for plaintiff.

Carl F. Stucky, Jr., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

KNAPP, District Judge.

The above styled action, commenced in the Common Pleas Court of Kanawha County, West Virginia, was removed to this Court upon motion of the defendant. Subsequent thereto, this Court, on February 2, 1971, denied plaintiff's motion to remand, and on August 5, 1971, the defendant filed a Motion for Summary Judgment based primarily upon two grounds: (1) lack of privity of contract and (2) the nonexistence of any warranty, express or implied. In support of its motion the defendant filed a deposition of Violet V. Whittington, the plaintiff, and affidavits of Jerome Maas, M. D., Senior Physician of the Medical Research Division of Eli Lilly and Company, Raymond Rauch, an attorney for Eli Lilly and Company, and J. E. Marmon, a Group Vice-President of Marketing for Eli Lilly and Company.

The facts of this case may be briefly summarized as follows: In February, 1969, plaintiff, Violet V. Whittington, obtained a one month supply of an oral contraceptive, known as "C–Quens", manufactured by Eli Lilly and Company, together with a continuous prescription therefor. Thereafter, and until January, 1970, when plaintiff terminated the use of "C–Quens", she purchased all her supply of "the pill" by prescription from the Nitro store of Cohen Drug Stores. At no time did plaintiff obtain "C–Quens" directly from the defendant. In the month of February, 1970, plaintiff, suspecting that she had become pregnant since she had not experienced her usual menstrual periods from November, 1969, to that date, consulted several physicians who confirmed her pregnancy, and on September 15, 1970, a son, Glen Edward Whittington, was born to her at Thomas Memorial Hospital. Said birth was normal and not unusual according to plaintiff's deposition. The plaintiff has no physical problems attributable to her pregnancy.

On the occasion of plaintiff's consultation with Dr. Fred Goff in February, 1969, when "C–Quens" was prescribed, the physician allegedly told the plaintiff that "I have given them to hundreds of women and I haven't had a failure yet." At that time also, he furnished her with a booklet concerning "C–Quens", which booklet was attached to the Maas affidavit as Affiant's Exhibit No. 2. The plaintiff also received an instruction pamphlet with each packet of "C–Quens". Prior to the date she became aware of her pregnancy she received no other literature or information concerning the product. Nor was she ever told that "C–Quens" was absolutely fool proof and positively effective.

Plaintiff premises her cause of action on an alleged breach of an implied warranty of fitness for the purpose for which the product is intended, alleging that the defendant warranted absolute efficacy of "the pill". However, according to plaintiff's deposition she talked with no one who claimed to be representing Eli Lilly and Company about "C–Quens" and their effectiveness. Moreover, the complaint contains no allegation of negligence in the manufacture of "the pill" or harmful effects resulting from the taking of said "pill". In the deposition of Dr. Maas, it is revealed that subsequent to the approval by the Federal Food and Drug Administration of the application of the defendant to market the oral contraceptive, "C–Quens", Dr. Maas was charged by his Company with the monitoring of post-approval data concerning "C–Quens". This resulted in submission to the FDA at 12 month intervals detailed reports concerning the use of "C–Quens" by consenting females, which reports included references to the reported efficacy of "C–Quens" obtained from prescribing physicians and from clinics. Dr. Maas stated that neither before nor after the approval by the FDA for "C–Quens" use did the statistical data resulting from clinical trials and post-approval monitoring reflect that "C–Quens" were 100% effective in the prevention of conception in the human female. Such statistical data did demonstrate that the gross

pregnancy rate of women in the clinical trial never exceeded 1.9 per 100 woman years when calculated on the basis of Pearl's Formula, which is the number of pregnancies multiplied by 1200 (100 women completing 12 cycles) divided by the total number of treatment cycles. Dr. Maas further related that he had examined all product information pertaining to "C–Quens" which had been distributed by the defendant for the general public and prescribing physicians, including the documents prepared by his Company and furnished to the plaintiff, . Violet V. Whittington, contemporaneously with, and subsequent to, her deposition. In none of the documents so furnished, and in no other published literature, has Eli Lilly and Company ever contended that its oral contraceptive is totally effective to prevent conception.

Exhibit No. 1 attached to Dr. Maas' affidavit consisted of standard directions for the use of the pill, while the Affiant's Exhibit No. 2 was an informative pamphlet regarding "C–Quens". The latter pamphlet stated that " * * * When taken as directed, the tablets offer virtually 100% protection." Plaintiff had been furnished this pamphlet when the product was prescribed for her use. The plaintiff, in her deposition, testified that she did not know what the word "virtually" meant. The word "virtually" is defined in Webster's Third New International Dictionary to mean "almost entirely". Clearly then, it does not mean absolute. The depositions of Raymond Rauch and J. E. Marmon dealt with the marketing of defendant's products only through drug wholesalers who in turn sell the drugs to retail pharmacists or out-patient clinics. At no time were sales made by the defendant to Violet V. Whittington directly.

■■ This Court, in considering the record herein, including the deposition of Dr. Maas, together with the exhibits attached thereto, the deposition of the plaintiff, Violet V. Whittington, and the pleadings, has concluded that there is no genuine issue of fact to be resolved. A thorough review of the foregoing items indicates clearly that there was no warranty, either express or implied, made by Eli Lilly and Company to the plaintiff that "C–Quens" would absolutely prevent pregnancy. According to plaintiff's own deposition the pamphlet furnished her by the doctor stated that it was only "virtually" 100% effective, "virtually" clearly not being synonymous with absolutely. Tests by the manufacturer reveal that there exists a certain minimal percentage of individuals who are not afforded absolute protection by the pill and can become pregnant. The drug is, however, clearly reasonably safe and fit for use by the public as an oral contraceptive. Manufacturers of products are not liable under a breach of warranty theory to persons, who, having taken or received drugs, contract that which the drug was designed to prevent, where brochures published by the manufacturer to be used by physicians and furnished to individual takers in connection with administration of the drug contain no warranty, either express or implied, as to the absolute effectiveness of the drug. Butler v. Travelers Insurance Company, 202 So.2d 354 (La.App. 1967).

It is accepted generally in the scientific world that the human body is a miraculously effective machine, and its physiological structure is designed to meet its needs for survival and for reproduction of its kind. And yet, perfect as it is, it is subject to malfunction and to variances in the functioning of its integral parts, including the reproductive system of the female of the species. Without the imposition of artificial agents, it is a recognized medical fact that such interruptions in normal physiological processes of the reproductive system in a particular female may alter nature's plan in the propagation of the human race, and consequently, may contribute to, or may prevent pregnancy.

The pill is an artificial agent designed to alter the reproductive processes that in the normal course of things, if left undisturbed, provides a means for the propagation of the species. In the very

nature of things it cannot be totally and absolutely effective. The undisturbed physiological processes of the female reproductive system in nature do not reach absolute perfection in their functions. And just as perfection is not achieved by nature in these functions, so also it cannot be expected to be achieved by artificial means.

The instant case is analogous, to some extent, to those cases wherein an individual's allergy causes a harmful reaction to a drug. Courts have been extremely reluctant to permit recovery on the theory of warranty wherein hypersensitivity or allergy produces harmful results from an otherwise safe drug. No manufacturer of an oral contraceptive guarantees the 100% effectiveness of its product. In actions by a buyer against a seller for breach of warranty to recover damages for injury resulting from the use of the product, there is generally no liability upon a seller where the buyer has been unusually susceptible to injury from the product. Anno: Unusual Susceptability to Injury, 26 A.L. R.2d 963, at p. 966. The language of the Court in Bennett v. Pilot Products Company, 120 Utah 474, 235 P.2d 525 (1951), in rejecting the warranty theory is particularly significant:

> "We * * * cannot require the merchant to assume the role of absolute insurer against physiological idiosyncracy."

Likewise, the manufacturer cannot be required to insure against the susceptibility of certain individuals. That same opinion made this further observation:

> "To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade."

In the instant case, the defendant cannot be held to have become an insurer against plaintiff's "physiological idiosyncracy", or to have guaranteed the absolute effectiveness of a product of this nature. Its very purpose is to subvert the most complex of the synchronized systems of the human body—the mechanism that serves to sustain life. The laws of nature involved here do not readily lend themselves to systematic and perfect subversion. That is the collective experience of humankind.

There being in my opinion no implied or express warranty upon which the plaintiff may premise her cause of action, it is not deemed necessary to consider the question of privity between the parties.

For the reasons hereinbefore set out, the Defendant's Motion for Summary Judgment is granted. Counsel may prepare an appropriate order incorporating this opinion by reference therein.