**Gail Y. DUNKIN and husband, Russell L. Dunkin, Plaintiffs,**

v.

**SYNTEX LABORATORIES, INC., Syntex (FP), Inc. and Syntex Puerto Rico, Inc., Defendants.**

No. Civ. C–76–428.

United States District Court, W. D. Tennessee, W. D.

Oct. 14, 1977.

J. B. Cobb, Memphis, Tenn., for plaintiffs.

Henry H. Hancock, Farris, Hancock, Gilman, Branan & Lanier, Memphis, Tenn., for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT

BAILEY BROWN, Chief Judge.

This cause comes before the court on the motion of defendants, Syntex Laboratories, Inc., Syntex (FP), Inc., and Syntex Puerto Rico, Inc., for summary judgment as to each cause of action stated against them in this case. This action was brought by Gail Y. Dunkin and her husband Russell L. Dunkin, who seek to recover for injuries and losses allegedly occasioned by a stroke suffered by Gail Dunkin as a result of her use of defendants' birth control pills. The pills were prescribed for her by her physician.

In considering this motion, the court is cognizant of the fact that summary judgment is appropriate only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. Rule 56.

## I BREACH OF DUTY TO WARN OF RISKS ASSOCIATED WITH USE OF A PRESCRIPTION DRUG

The Dunkins contend that defendants negligently breached a duty to adequately warn the prescribing physician, the general medical community, and Gail Dunkin herself of the risks inherent in the use of Norinyl 1 + 80, 28-day birth control pills, the type used by Dunkin.

The initial issue presented concerns the scope of the duty to warn imposed by law upon a drug manufacturer selling prescription drugs. Defendants contend that such a duty exists, but that it is limited to a duty to warn the prescribing physician of the risks inherent in the drugs he prescribes.

■ Counsel has advised the court that there is no Tennessee law directly controlling this issue, and the court is of the same opinion. In this situation, this being a diversity case, this court must make an educated guess as to the law the courts of Tennessee would apply if faced with the issue.

■ This court is of the opinion that the Tennessee courts would choose to apply the majority rule, that the manufacturer of a prescription drug has a duty to warn only physicians, and not the ultimate users, of risks associated with the use of that drug. This rule is based on a recognition that prescription drugs are sold on a prescription basis and not over-the-counter because the special expertise of a trained physician is necessary for their safe use. Thus, an effective warning could go only to the medical profession, and not to an untrained patient. Moreover, concern has been expressed that attempts to give detailed warnings to patients could mislead patients and might also tend to interfere with the physician/patient relationship. On the other hand, it has been recognized that an effective warning regarding a prescription drug must go to the medical profession generally, and not to the prescribing physician alone, since the patient may not return to the original prescribing physician when problems occur. See *Hoffman v. Sterling Drug, Inc.,* 485 F.2d 132 (3rd Cir. 1973); *Basko v. Sterling Drug, Inc.,* 416 F.2d 417 (2d Cir. 1969); *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (9th Cir. 1968); *Stottlemire v. Cawood,* 213 F.Supp. 897 (D.D.C.1973).

■ This is not to suggest that persons using prescription drugs should receive no warning of the dangers involved in the use of those drugs. Rather, it is this court's determination that the duty to warn the patient, if one exists, lies with the physician and not with the drug manufacturer.

Further, the rule stated above with regard to prescription drugs would not apply in a case involving over-the-counter drugs.

■ The affidavits and depositions now on file in this case establish without contradiction that the following warnings were provided by defendants concerning the possible side effects attending the use of Norinyl birth control pills:

(1) The Physicians' Desk Reference for 1973 and 1974, the years in question, warned of possible cerebral apoplexy, cerebral thrombosis, or cerebrovascular disorders, thus specifically alerting physicians to the danger of strokes.

(2) A package insert for all packages of Norinyl 1 + 80, 28-day, addressed to physicians, also warned of possible cerebral apoplexy, cerebral thrombosis, or cerebrovascular disorders.

(3) Additionally, a leaflet contained in each Norinyl 1 + 80, 28 day tablet dispenser, labeled "patient information," warned that safe use of the drug required "a careful discussion with your doctor" and that the most serious known side effect of the drug was "abnormal blood clotting, which can be fatal."[1]

(4) The package insert for physicians, and the leaflet for patients, were in accordance with FDA regulations, and in fact the exact language contained in the insert and leaflet was required by those regulations.

With regard to the adequacy of the warnings given, it is difficult to see how they could have been more precise or more accessible to the medical profession. The package insert and the Physicians' Desk Reference entry warned specifically of the possibility of the adverse side effect which Gail Dunkin allegedly suffered. Physicians prescribing the drug would almost certainly be advised of the dangers inherent in its use by either the insert or the Physician's Desk Reference entry. The medical profession in general would be advised of the dangers involved by the Physician's Desk Reference, a standard reference work available throughout the medical community. Accordingly, this court holds that the warnings given by defendants regarding strokes as a possible side effect of Norinyl 1 + 80, 28-day were adequate as a matter of law in terms of the precision in which they pointed out the risk and in terms of their distribution within the medical profession.

■ Moreover, Dr. Wilson, who prescribed Norinyl for Dunkin, deposed that at the time he prescribed the pills for her he was aware of the risk of cerebral vascular accidents. He further stated that his sources of information were the package inserts and Physician's Desk Reference entry, as well as information provided by defendants' traveling "detail men." Wilson's familiarity with the risks associated with Norinyl buttresses our conclusion that adequate warnings were given. It also negates the proposition that any presumed breach of the duty to warn on the part of defendants herein could have been the proximate cause of Gail Dunkin's injury.

Accordingly, defendants are entitled to a summary judgment as to plaintiffs' negligent failure to warn claim.

## II  NEGLIGENT MARKETING, PROMOTION AND MISREPRESENTATION

■ The Dunkins also allege that defendants are liable for negligently marketing and promoting an inadequately tested drug with unknown side effects and for negligently misrepresenting Norinyl as safe when in fact inadequate testing had been conducted to support such a representation.

However, as noted above, there is no genuine issue of material fact regarding the warnings concerning possible cerebrovascular accidents which defendants provided to the medical community at the time Gail Dunkin received a prescription for Norinyl and used the drug. This is clearly not a case where a drug company marketed a drug with unknown deleterious side effects, but rather a case where defendants market-

---

1. Gail Dunkin admitted in her deposition that she saw and read this leaflet, although at the time the deposition was taken she could not remember the details of the warning contained therein.

ed a drug with known adverse consequences for a small but statistically significant percentage of users. Moreover, this court has already held that the risks associated with Norinyl were sufficiently communicated to the medical profession at large and to Dunkin's prescribing physician in particular, and that the warnings given made specific and unambiguous reference to the precise side effect allegedly suffered by Dunkin.

Accordingly, this court holds as a matter of law that at all times material to this lawsuit, defendants had conducted adequate testing to isolate the possibility of cerebrovascular accidents as a side effect of Norinyl 1 + 80, 28-day, and that this information was adequately communicated to members of the medical profession. Since adequate testing had been conducted with regard to the injury suffered by Gail Dunkin, defendants are entitled to summary judgment as to the allegations that they negligently marketed an inadequately tested product.

■ With regard to the allegations of negligent misrepresentation, the court has already held that full and adequate disclosure of possible cerebrovascular accidents had been made to the medical profession. Defendants' answers to interrogatories and the affidavits on file show that no representations were made to the public at large or to individual users, other than the warning contained in the tablet dispenser leaflets pursuant to FDA regulation. This brief warning alerted users to the existence of serious side effects, including possible fatal abnormal blood clotting. Moreover, it alerted users to the necessity of "careful discussion with your doctor" for safe use of the drug, and pointed out that some women should not use the drug at all.

The court holds as a matter of law that such a warning is not false or misleading when issued with a drug which may only be obtained by prescription. It certainly cannot be construed as a communication designed to minimize or play down the risks associated with the use of Norinyl.

While plaintiffs' complaint alleges that defendants engaged in various promotional activities involving false representations as to the safety of Norinyl, a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. Rule 56(e). Plaintiffs have failed to meet that burden here.

Accordingly, defendants are entitled to summary judgment as to the negligent misrepresentation claims asserted.

## III EXPRESS AND IMPLIED WARRANTIES

Plaintiffs have also asserted claims alleging breach of the implied warranties of merchantability and fitness for a particular purpose, and express warranties.

With regard to the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, it may be assumed arguendo that such warranties did arise in the instant situation and that lack of privity with the defendants would not bar this action, under Tennessee law. T.C.A. §§ 47–2–314, 47–2–315, and 23–3004.

The only pertinent provision of § 47–2–314, dealing with the warranty of merchantability, is the requirement that the goods "are fit for the ordinary purposes for which such goods are used." Plaintiffs do not contend that the drugs provided by defendants were impure or contaminated, or that they were ineffective as a means of birth control. Rather, they apparently contend that the potential for adverse side effects in some users made these birth control pills unfit for ordinary purposes.

■ This court does not agree. As noted above, there is no genuine factual issue remaining as to the warnings provided by defendants regarding potential risks associated with Norinyl. This court holds as a matter of law that where a prescription drug is sold by a drug manufacturer which has warned the medical community of specific risks associated with use of the drug, the warranty of merchantability is not

breached where a particular user suffers the adverse side effect warned of. To hold otherwise would make the drug manufacturer an insurer of the drug user's health. See *Whittington v. Eli Lilly and Co.*, 333 F.Supp. 98 (S.D.W.Va.1971).

■ A similar analysis leads to the same conclusion as to the implied warranty of fitness for a particular purpose. Where a drug manufacturer sells a drug designed for a specific purpose (here, contraception), and warns the medical profession of possible side effects in some users, the warranty of fitness for a particular purpose is not breached where one of those side effects occurs.

■ Accordingly, defendants are entitled to summary judgment with regard to the alleged breach of any implied warranties which might have arisen herein.

■ While plaintiffs assert that express warranties regarding the safety of Norinyl were breached by defendants, the affidavits on file show that no such express warranties were made.

As noted above, it has been established for purposes of this motion that the only representations made by defendants to Gail Dunkin regarding the safety of Norinyl were contained in the tablet dispenser leaflets. It is clear no express warranty was made that cerebrovascular accidents would not occur in some Norinyl users as a side effect.

As noted above, there is no genuine factual issue remaining as to the warnings given by defendants to the medical community regarding Norinyl. These warnings clearly identified cerebrovascular accidents as a possible side effect in some users. Thus, there could have been no express warranty that such phenomena would not occur.

Accordingly, defendants are also entitled to summary judgment as to any asserted breach of express warranties.

## IV  STRICT LIABILITY IN TORT

■ Plaintiffs have also asserted a strict liability in tort claim. While Tennessee does recognize this cause of action, as embodied in Section 402A of the Second Restatement of Torts, it is clear that no viable strict liability claim arises under the instant circumstances.

Section 402 A requires, inter alia, that the product be in an "unreasonably dangerous" condition at the time it leaves the seller's hands. Comment i to Section 402 A states:

Many products cannot possibly be made entirely safe for all consumption, and *any food or drug necessarily involves some risk of harm*, if only from overconsumption . . . This is not what is meant by "unreasonably dangerous" in this Section. [Emphasis added.]

Moreover, comment j to Section 402 A goes on to mention the necessity for warnings in some instances to prevent particular products from being "unreasonably dangerous."

Adequate warnings were given by defendants in this case. In light of the warnings, the birth control pills marketed by defendants were not "unreasonably dangerous," despite the fact that certain irreducible risks were associated with their use. Accordingly, defendants are entitled to summary judgment on this issue as well.

## V  SYNTEX PUERTO RICO, INC.

■ In addition to the grounds dealt with above, Syntex Puerto Rico, Inc. asserts it is entitled to summary judgment in this cause because it does not manufacture, label, distribute, sell, or promote any oral contraceptives. This total lack of involvement of Syntex Puerto Rico in the oral contraceptive business is established by that defendant's answers to interrogatories, and is not controverted by anything more than the bare allegations of plaintiffs' Complaint.

Accordingly, summary judgment is appropriate on this ground as well for Syntex Puerto Rico, Inc.

### CONCLUSION

For the reasons stated above, the court finds that there is no genuine issue as to any material fact in this lawsuit, and that defendants are entitled to a judgment as a matter of law as to all claims asserted against them in this action. Summary judgment is therefore GRANTED in this action for the defendants, Syntex Laboratories, Inc., Syntex (FP), Inc., and Syntex Puerto Rico, Inc. The Clerk is directed to enter a judgment in accordance with this memorandum.

It is so ORDERED.