Nancy J. WILLIAMS, Plaintiff,

v.

## LEDERLE LABORATORIES, DIVISION OF AMERICAN CYANAMID COMPANY, Defendant.

### No. C–1–82–1072.

United States District Court, S.D. Ohio, W.D.

July 9, 1984.

Mark A. Wall, Nicholas E. Bunch, Middletown, Ohio, for plaintiff.

Mark A. Vander Laan, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came on for hearing on defendant's motion for summary judgment (doc. 32), plaintiff's memorandum in opposition (doc. 35), and defendant's reply (doc. 42). Having reviewed the affidavits and other materials offered in support of and opposing the motion and considering the

arguments of counsel, we conclude that there are genuine issues of material fact to be resolved at trial. The first of these issues involves the adequacy of the warning supplied by defendant; the second, the proximate cause of plaintiff's injuries. Accordingly, defendant's motion for summary judgment is denied.

## I.

Plaintiff, Nancy Williams, alleges that she contracted poliomyelitis as a result of contact with her infant daughter shortly after the child received Orimune, an orally administered live trivalent polio vaccine manufactured and distributed by defendant Lederle. The vaccine was administered in November 1978 in the office of Dr. Thomas Furlong, plaintiff's family physician since 1976. Plaintiff maintains that Lederle failed to provide adequate warnings of the risk associated with the vaccine, and that that failure was the proximate cause of her injuries.

Although the parties dispute the nature of plaintiff's illness, with defendant insisting that plaintiff has Guillain-Barre Syndrome rather than polio, that issue is not material to defendant's motion. Therefore, we assume *arguendo* that plaintiff contracted polio as a result of contact with her recently immunized daughter.

The parties agree that although plaintiff alleges several theories of recovery, the complaint primarily focuses on the theory of strict liability. The lead case in Ohio on the strict liability of a manufacturer of an ethical, i.e., prescription, drug is *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981). In that case the Supreme Court of Ohio adopted Comment k to Section 402A of the *Restatement of Torts 2d.*

Defendant asserts that it is entitled to summary judgment as a matter of law on three grounds.[1] The narrow question which we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [therefore] that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56(c) motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979) (emphasis original).

Defendant asserts first that the product information about Orimune, including the package insert and information published in Physician's Desk Reference, warned that persons who came in contact with a recent vaccinee could contact poliomyelitis and that this warning was adequate as a matter of law. Secondly, defendant contends that even if the warning was inadequate, the uncontroverted facts demonstrate that the inadequacy was not the proximate cause of plaintiff's injury. Defendant further asserts that the learned intermediary rule prohibits finding defendant negligent in not communicating the risk directly to the plaintiff herself.

For reasons that follow, we find that the adequacy of the warning is a disputed issue of fact that must be resolved at trial. Moreover, we find that there is a vigorous dispute as to the proximate cause of plaintiff's injuries.

It is unnecessary at this time to resolve the third issue raised by plaintiff's motion. However, as the third contention poses a

---

1. Finally, defendant argues that the undisputed facts demonstrate that it did not breach any implied warranties of fitness or of merchantability and thus is entitled to judgment as a matter of law. As the parties agree that plaintiff relies primarily on the theory of strict liability, we decline to consider defendant's fourth argument. We merely point out that the record at this state is not adequate to permit us to determine whether defendant breached implied warranties of fitness of merchantability.

legal issue that may be essential to the trial of this case, we shall discuss our position on exceptions to the legal intermediary rule briefly. We emphasize that we do so only so that the parties will understand our view of the issues that must be resolved at trial.

## II.

■ The parties agree that Orimune is a beneficial but potentially dangerous drug. Ohio law, following Comment k to Section 402A, provides that such a drug is not unreasonably dangerous if the manufacturer provides adequate warnings of all potential adverse reactions inherent in the use of the drug of which the manufacturer being held to the standards of an expert in the field, knew or should have known to exist at the time of marketing. The failure to provide an adequate warning renders the drug unreasonably dangerous and subjects the manufacturer to strict liability for resulting injury. *Seley,* 67 Ohio St.2d at 196–97, 423 N.E.2d 831.

■ The adequacy of a warning is a question of fact to be determined by a preponderance of the evidence. *Seley,* 67 Ohio St.2d at 192, 423 N.E.2d 831. Pointing out that neither Section 402A nor Comment k provides the factfinder with directions for determining the adequacy of a warning, the Ohio Supreme Court held that a warning is adequate for Comment k purposes where "under all the circumstances, it reasonably discloses to the medical profession all risks inherent in the use of the drug which the manufacturer knew or should have known to exist." 67 Ohio St.2d at 197–98, 423 N.E.2d 831 (citations omitted). The court went on to state that a warning may be inadequate because of "its factual content, its expression of the facts, or the method or form in which it is conveyed." The court explained:

A reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensity demanded by the nature of the risk. A warning may be found to be unreasonable in that it was unduly delayed, reluctant in tone or lacking in a sense of urgency.

67 Ohio St.2d at 198, 423 N.E.2d 831.

The following warning appeared in both the Orimune package insert and the Physician's Desk Reference (PDR) at the time in issue:

Expert opinion is in agreement that the administration of live oral poliovirus vaccines is generally an effective and safe method of protecting populations against the natural disease. Paralytic disease following the ingestion of live poliovirus vaccine has been reported in individuals receiving the vaccine and in some instances in persons who were in close contact with subjects who had been given live oral poliovirus vaccine. The rare occurrence of "vaccine related cases" were considered "compatible" with vaccine induced disease where certain epidemological criteria including certain incubation, clinical and laboratory values could be judged compatible with vaccine as a cause. It has been estimated that the risk of vaccine induced paralytic poliomyelitis is about one chance per million doses.

The estimated risk of vaccine-induced paralytic disease occurring in vaccinees or those in close contact with vaccinees is extremely low. However, the risk should be considered by the physician and such information should be conveyed to the parent(s) at the time of vaccination. Those parents of a vaccinee who have not had previous polio vaccination should probably be considered among those adults as subject to increased risk of exposure and in this special situation. In the judgment of the physician responsible, protection may be needed for these intimate contacts.

This warning appeared in the package insert and PDR in a section captioned "Adverse Reactions." Doc. 32, exh. A.

Defendant presented uncontradicted evidence that beginning in 1965 Lederle provided detailed information about the risk associated with Orimune. Defendant argues that that fact plus the language of

the warning constitutes an adequate warning as a matter of law because, in defendant's view, the widely disseminated warnings reasonably disclosed to the medical profession all risks inherent in the use of the drug.

Defendant also refers us to the deposition of Dr. Furlong, who prescribed Orimune for plaintiff's infant daughter. Dr. Furlong testified that at the time he prescribed Orimune for the child he was aware of the warnings contained in the package insert and PDR, and that he considered the risk that a parent might contract polio when deciding whether to warn of that risk. Defendant maintains that this testimony conclusively establishes that Dr. Furlong was fully apprised of the risk of contact polio and, therefore, that the warning is adequate as a matter of law. Defendant refers us to *Dunkin v. Syntex Laboratories, Inc.,* 443 F.Supp. 121 (W.D.Tenn.1977) and *Goodson v. Searle Laboratories,* 471 F.Supp. 546 (D.Conn.1978). In both cases, the courts granted defendants' motions for summary judgment on the issue of the adequacy of the warning.

Plaintiff's position is that the warning did not convey a fair indication of the nature of the risk involved. She has provided us with the affidavit of Dr. Cyril H. Wecht. That affidavit states that prior to November 1978 it was reported that Orimune could cause poliomyelitis in persons coming into contact with vaccinees. Dr. Wecht stated further that over half of the endemic cases of polio reported in the United States during the ten years prior to November 1978 were traceable to a live oral polio vaccine. In Dr. Wecht's opinion the Orimune package insert for 1978 did not convey a fair indication of the nature of the dangers involved, was reluctant and equivocal in tone and lacked a sense of urgency. Furthermore, he found the statistical estimate provided in the warning misleading, both quantitatively and qualitatively, insofar as it contained no satisfactory estimates of the number of doses received and the number of susceptible persons who were in contact with vaccinees (doc. 35, exh. D).

Plaintiff also provided statistics from the Center for Disease Control (CDC) in Atlanta, Georgia covering the decade between 1969 and 1978 (doc. 35, exh. A). Those statistics indicate that during that ten-year period, one hundred and four endemic cases of poliomyelitis were reported. Sixty-five of these cases were vaccine associated; forty-seven of the sixty-five were reported as "contact with vaccinee" cases. Plaintiff argues that the warning statement that "the risk of vaccine-induced paralytic poliomyelitis is about one chance per million doses" is not an adequate reflection of the risk revealed by these statistics.

Our starting point is the Supreme Court of Ohio's statement in the *Seley* syllabus that "the adequacy of such warning is a question of fact to be determined by a preponderance of the evidence." 67 Ohio St.2d at 192, 423 N.E.2d 831. In light of this unequivocal statement of Ohio law, we do not see how we could rule that the warning given by defendant in 1978 was adequate as a matter of law.

Furthermore, we find that the Wecht affidavit and CDC statistics create a factual issue as to the adequacy of the warning. Dr. Wecht's opinion that the warning lacked a sense of urgency and was reluctant in tone is, of course, not conclusive, but given his credentials as outlined in the affidavit is sufficient to raise a factual issue, particularly in conjunction with the CDC statistics.

Dr. Furlong's statement that he was aware of the possibility of persons developing contact polio as a result of having read the package insert and PDR, and took that risk into account in deciding whether to warn a patient of the risk does not change our view. The issue is not whether Dr. Furlong believed he was adequately warned of the risk but whether the factfinder finds that the warning was adequate in light of all of the circumstances. It is possible that the factfinder may conclude that, given the seriousness of the risk, the warning was inadequate and that Dr. Furlong would have behaved differently had

he been provided with a more urgent warning.

Finally, the cases relied on by defendant are not apposite. In *Dunkin v. Syntex Laboratories, Inc.,* 443 F.Supp. 121, 124 (W.D.Tenn.1977), a case governed by Tennessee law, the court found that the warnings provided with a birth control pill were adequate as a matter of law. The warnings went not only to the medical profession but also to users. The package insert and PDR warned of possible stroke. A leaflet contained in each pill dispenser and labeled "Patient Information" warned that use of the drug required careful discussion with a physician and that the most serious known side-effect was blood clotting "which can be fatal." The plaintiff in *Dunkin* admitted having seen and read this leaflet. The Court found that these warnings could not have been more precise in that they identified specifically the side effect experienced by plaintiff. There is no such admission by plaintiff in the instant case. Moreover, a warning that contact with a recent vaccinee might result in paralytic polio is considerably less specific than a warning that use of an oral contraceptive might result in blood clotting that could be fatal.

In *Goodson v. Searle Laboratories,* 471 F.Supp. 546 (D.Conn.1978), governed by Connecticut law, the issue was whether the manufacturer of an ethical oral contraceptive had a duty to warn all foreseeable users of risks associated with the contraceptive. The Court, adopting the majority position that the manufacturer's duty ran only to the medical profession, did not even discuss the adequacy of the warning. Thus, although it is true that the Court granted defendant's motion for summary judgment, the case is easily distinguishable from the one at bar in which the plaintiff has challenged the adequacy of the warning.

We conclude that Ohio law requires that the issue of the adequacy of the warning be left to the finder of fact. Moreover, we find that plaintiff has raised a factual issue as to the adequacy of the warnings sufficient to withstand defendant's motion for summary judgment.

### III.

Defendant next argues that even if the warning was inadequate it is nevertheless entitled to judgment as a matter of law because the undisputed facts demonstrate that the inadequacy of the warning was not the proximate cause of plaintiff's injury. It contends that a manufacturer cannot be held liable for failing to provide an adequate warning if the prescribing physician knows and understands the risks associated with a prescription duty and chooses not to warn his patient of those risks.

Defendant relys upon Dr. Furlong's testimony that he knew and understood the risk associated with Orimune and nevertheless decided that it was not necessary to warn the plaintiff. Defendant points out that Dr. Furlong testified that, despite his knowledge of plaintiff's injury and despite subsequent revisions in the Orimune package insert and the warning in the PDR, he has not changed his practice and continues not to warn patients about the risks associated with Orimune. Defendant concludes that no warning, no matter how urgent, would have changed Dr. Furlong's decision not to warn plaintiff, and thus that any defect in the warning cannot be the proximate cause of plaintiff's injury.

In a strict liability claim based on failure to warn, Ohio law requires the plaintiff to establish that the lack of adequate warnings was a proximate cause of ingestion of the drug. *Seley,* 67 Ohio St.2d at 193, 423 N.E.2d 831. The plaintiff is aided by a rebuttable presumption that the failure to provide adequate warnings was a proximate cause of ingestion. *Id.* If the defendant does not present rebutting evidence, the presumption satisfies the plaintiff's burden of demonstrating that the inadequate warning was the proximate cause of the ingestion of the drug. 67 Ohio St.2d at 200, 423 N.E.2d 831. A defendant who presents evidence that an adequate warning would have made no difference in the physician's decision to prescribe a drug has

rebutted the presumption in favor of the plaintiff. 67 Ohio St.2d at 201, 423 N.E.2d 831.

In *Seley* the plaintiffs claimed that the warnings accompanying an oral contraceptive were defective in that they failed to warn that women with a prior history of hypertension associated with pregnancy were subject to a higher risk than other women of experiencing dangerously high blood pressure or stroke as a result of using the drug. Despite conflicting evidence, the jury found that Mrs. Seley had not told her doctor of her history of hypertension associated with pregnancy. The court concluded that an adequate warning would have made no difference in the physician's decision to prescribe the contraceptive. 67 Ohio St.2d at 200–01, 423 N.E.2d 831.

In the case at bar, Dr. Furlong admitted that despite knowing of the risk, he chose not to warn plaintiff of the risk of contact polio. Even if we assume that plaintiff had not been previously vaccinated against polio and thus was among those adults subject to an increased risk, it is not clear whether Dr. Furlong was aware of that aspect of her medical history. In other words, unlike the situation in *Seley,* it is not clear that a different warning would have made no difference in Dr. Furlong's decision. It is for the jury to determine whether an adequate warning would have made no difference in Dr. Furlong's decision to prescribe Orimune.

Defendant emphasizes Dr. Furlong's testimony that, despite revisions in the Orimune warnings and his own knowledge of plaintiff's experience, he continues not to warn of the risk of contact polio associated with Orimune. What Dr. Furlong might or might not have done involves to some degree his credibility. Thus, we conclude that it is for the jury to determine whether the presence of an adequate warning would have made no difference in Dr. Furlong's decision.

Defendant refers us to the case of *Stanback v. Parke, Davis & Company,* 657 F.2d 642 (4th Cir.1981). In that case the manufacturer of the flu vaccine Fluogen conceded for purposes of a summary judgment motion that it had not warned the medical profession of a risk of Guillain-Barre Syndrome (GBS) associated with flu vaccines. It further conceded for purposes of argument that a Fluogen injection was the proximate cause of plaintiff's GBS. *Id.* at 645. Plaintiff's treating physician testified in his deposition that he was aware of the risk of GBS associated with flu vaccines, but nonetheless had chosen not to advise his patients about that risk before prescribing Fluogen. The Court found that the treating physician's decision, made in full knowledge of the information that would have been contained in an adequate warning, insulated the manufacturer from any liability resulting from its failure to warn. Given what it described as "the peculiar facts" of this case, the Court concluded that there was insufficient evidence of causation to allow the question to be put to a jury. 657 F.2d at 645.

In *Stanback,* however, the Court carefully qualified its decision. It not only stressed its awareness of the judicial inclination to forbid intervening acts by a physician from insulating a drug manufacturer from liability but also emphasized its own view of the soundness of that policy. It stated that a manufacturer should not be insulated from liability where the evidence suggested that a physician might have heeded an adequate warning, for under those circumstances the failure to warn could have made a difference and would be a proximate cause of any injury. The test is whether the evidence affirmatively establishes that a physician would not have responded differently had he received an adequate warning. 657 F.2d at 645–46.

We are not persuaded that the evidence marshaled by defendant affirmatively establishes that Dr. Furlong would not have behaved differently had he received a different warning. As plaintiff points out, Dr. Furlong has never treated an active case of polio, relied solely upon the package insert and the PDR to determine the risk, and under certain circumstances

would discuss the risk associated with Orimune with his patients. Although we stress that we do not disbelieve Dr. Furlong's testimony that he would not have behaved differently, we nevertheless find that whether he would have is a matter of credibility and thus a determination better made by the finder of fact. Thus a question at trial will be whether the defendant has affirmatively established that Dr. Furlong would not have responded differently had the warning been adequate.[2]

## IV.

Because we find that there are genuine issues of material fact to be determined by the trier of fact with respect to both the adequacy of the warning and the proximate cause issue, we need not decide the last issue raised by defendant. However, as we anticipate that plaintiff will rely upon exceptions to the learned intermediary rule, we find it appropriate to indicate our views on this matter.

■ Ohio follows the majority rule that the manufacturer of an ethical drug owes a duty to make adequate warnings available to the medical profession only. The prescribing physician acts as a learned intermediary between the manufacturer and the individual for whom the drug is prescribed. *Seley*, 67 Ohio St.2d at 202–03, 423 N.E.2d 831. There are, however, a group of cases developing an exception to the learned intermediary rule. Each of those cases turns upon a factual determination that a drug denominated a prescription drug was not dispensed as such.

The first of these cases, *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968), arose out of a mass immunization program involving oral polio vaccine. The court recognized that ordinarily a warning

directed at the medical profession is sufficient. It pointed out, however, that where a prescription drug is dispensed as such, the choice is basically a medical one, "involving an assessment of medical risks in the light of the physician's knowledge of his patient's needs and susceptibilities." 399 F.2d at 130. Because the vaccine at issue was dispensed through a mass immunization program without such individualized balancing of the risk involved by a physician, the Court ruled that the manufacturer had an obligation to see that adequate warnings reached the consumer of the drug. 399 F.2d at 131.[3]

A similar rule has been adopted by the Fifth Circuit in a situation in which a child who was given oral polio vaccine by a public health nurse subsequently developed polio. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1275–78 (5th Cir.1974). The court noted that the drug had been dispensed without the individualized medical balancing of the risk to the vaccinee contemplated by the learned intermediary rule. Moreover, the Court found that the manufacturer should have foreseen the way in which its vaccine would be distributed, holding that the expertise to which a drug manufacturer is held includes knowledge of how one of its drugs is distributed and administered. *Id.* at 1277.

The Fifth Circuit subsequently applied the *Reyes* rule to a case in which the oral polio vaccine was administered in a private pediatrician's office. The evidence, including the physician's own testimony, indicated that the physician's office administered the vaccine in a manner similar to that at a public health center. *Givens v. Lederle*, 556 F.2d 1341, 1345 (5th Cir.1977). The plaintiff in *Givens*, like the plaintiff in the case at bar, developed polio shortly

2. Defendant also refers us to *Dunkin* in which the court stated that the treating physician's testimony as to his familiarity with the risks associated with an oral contraceptive negated "the proposition that any presumed breach of the duty to warn ... could have been the proximate cause of [plaintiff's] injury." 443 F.Supp. at 124. The quoted language, however, is dictum. Secondly, and as discussed in II *supra*,

the warnings in *Dunkin* were far more specific than those at issue here.

3. The court stated that such warnings could be supplied by advertisements, posters, releases to be read and signed by recipients, or by oral warnings given by the dispensers of the drug pursuant to instructions of the manufacturer. 399 F.2d at 131.

 

after her infant daughter was vaccinated with Orimune.

The Fourth Circuit declined to adopt a similar rule in a case in which a plaintiff received a swine flu vaccination in her physician's office. *Stanback,* 657 F.2d at 646–47. However, the court cited with approval the cases just described, pointing out that the polio cases concerned a nationwide immunization program undertaken to profit from a remarkable breakthrough in medical research. It reasoned that the exception was inapplicable to the facts before it, because the case at hand did not involve "a massive nationwide immunization program in which it would have been foreseeable by Parke Davis that large numbers of flu vaccines would be dispensed without a physician's consideration of individual needs and circumstances." 657 F.2d at 647.

The case before us similarly does not involve a massive nationwide immunization program. Nonetheless, it is conceivable that evidence could be adduced to show that the vaccine is typically administered without the individualized balancing that underlies the learned intermediary rule. The appropriate test for determining whether a manufacturer should be held liable for a failure to warn the ultimate consumer of risks associated with a prescription drug is whether the drug is commonly administered without individualized balancing by a physician of the risks involved and the individual's needs and circumstances. We adopt the Fifth Circuit's view that a manufacturer should be held to a standard of expertise that includes knowledge of how the medical profession administers the manufacturer's product. If it can be demonstrated that the product is commonly administered without an individualized balancing of the risk to the particular patient or to those who come into contact with the patient, the manufacturer has a duty to warn the ultimate consumer of the risk associated with ingestion of the drug. *Reyes,* 498 F.2d at 1277.

## V.

In summary, we find that there are genuine issues of material fact as to the adequacy of the warning given to the medical profession of the risk associated with the drug Orimune. In addition, we cannot conclude as a matter of law that even if the warning were inadequate, that the undisputed facts demonstrate that the absence of such a warning was the proximate cause of plaintiff's injuries. Accordingly, defendant's motion for summary judgment must be and hereby is DENIED.

SO ORDERED.