177 N.J. Super. 605 (1981)
427 A.2d 597
DORIS SPINDEN AND FRANK SPINDEN, PLAINTIFFS-APPELLANTS,
v.
JOHNSON & JOHNSON, ORTHO PHARMACEUTICAL CORP., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1981.
Decided February 19, 1981.
*606 Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.
Sheldon A. Weiss argued the cause for appellants (Ballen, Keiser & Denker, attorneys; Arthur E. Ballen on the brief).
Myron J. Bromberg argued the cause for respondents (Porzio & Bromberg, attorneys).
PER CURIAM.
Plaintiff Doris Spinden and her husband, suing per quod, appeal from a judgment dismissing the complaint at the close of their case. Plaintiff alleged that she suffered from thrombophlebitis and pulmonary embolism as a result of ingesting birth control pills, Ortho-Novum, manufactured by defendants. Plaintiffs contend that the trial judge erred in holding that defendants' warnings were adequate.
*607 At the outset, we note that in order to determine whether to grant defendants' motion for an involuntary dismissal, the court must accept all of plaintiffs' evidence as true and accord her the benefit of all the favorable inferences which could be drawn from her evidence; if reasonable minds could differ, the motion must be denied. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5 (1969).
The package insert warning in question, dated January 1970, stated in pertinent part as follows:
An increased risk of thrombo-embolic disease associated with the use of hormonal contraceptives has now been shown in studies conducted in both Great Britain and the United States.
Retrospective studies of morbidity in Great Britain and studies of morbidity in the United States have shown a statistically significant association between thrombophlebitis, pulmonary embolism and cerebral thrombosis and the use of oral contraceptives. There have been three principal studies in Great Britain leading to this conclusion, and one in this country. The estimate of the relative risk of thromboembolism in the study by Vessey and Doll was about sevenfold, while Sartwell and associates in the United States found a relative risk of 4.4, meaning that the users are several times as likely to undergo thromboembolic disease without evident cause as non-users. The American study also indicated that the risk did not persist after discontinuation of administration, and that it was not enhanced by long continued administration. The American study was not designed to evaluate a difference between products. However, the study suggested that there might be an increased risk of thromboembolic disease in users in sequential products. The risk cannot be quantitated, and further studies to confirm this finding are desirable. Retrospective studies in Great Britain have shown a statistical [sic] significant association between cerebral thrombosis and the embolism and the use of oral contraceptives. This has not been confirmed in the United States.
We agree with the trial judge that these warnings were adequate. Although several courts have held that the adequacy of warnings accompanying birth control pills is a jury question, those cases dealt with package inserts dated prior to 1969, before the results of more recent studies, and thus stronger warnings were included. See, e.g., Ortho Pharmaceutical Corp. v. Chapman, 388 N.E.2d 541 (Ind. Ct. App. 1979); McEwen v. Ortho Pharmaceutical Corp., 270 Or. 375, 528 P.2d 522 (Sup.Ct. 1974), and Leibowitz v. Ortho Pharmaceutical Corp., 224 Pa.Super. 418, 307 A.2d 449 (Super.Ct. 1973). See generally, Annotation, *608 "Liability of manufacturer or seller for injury or death allegedly caused by failure to warn regarding danger in use of vaccine or prescription drug," 94 A.L.R.3d 748 (1979), and Annotation, "Liability of manufacturer or seller for injury or death allegedly caused by use of contraceptive," 70 A.L.R.3d 315 (1976).
Cases dealing with package inserts after 1969, however, have upheld the adequacy of their warnings. In Dunkin v. Syntex Laboratories, Inc., 443 F. Supp. 121 (W.D.Tenn. 1977), the court dealt with the adequacy of defendant's warnings for its product, Norinyl, in 1973 and 1974. Although the substance of the warnings was not specified, the court said that the package insert, as well as the Physicians' Desk Reference, "warned specifically of the possibility of the adverse side effect [a stroke] which Gail Dunkin allegedly suffered." 443 F. Supp. at 124.
In Goodson v. Searle Laboratories, 471 F. Supp. 546 (D.Conn. 1978), plaintiff also suffered from a cerebrovascular accident causing permanent damage, as a result of taking defendant's birth control pills, Demulen 21. The package insert warnings in 1972, when the pill was prescribed, were similar to the warnings in this case; they set forth "an increased risk of thromboembolic disease associated with the use of hormonal contraceptives," as well as "a statistically significant association between ... cerebral thrombosis ... and the use of oral contraceptives." 471 F. Supp. at 547. As in Dunkin, granting defendant's motion for summary judgment, the court held that those warnings were adequate as a matter of law. 471 F. Supp. at 547-548.
The trial judge's reasoning that the phrase "a statistically significant association" means a cause and effect relationship seems correct, especially in view of the earlier clear statement in the warning that there is "an increased risk of thromboembolic disease associated with the use of hormonal contraceptives...."
The trial judge, although noting his obligation to accept all of plaintiff's evidence as true, nevertheless rejected part of the expert testimony of plaintiff's witness, Dr. Wendel. Dr. Wendel *609 took issue with a statement in the package insert warning: "The American study also indicated that the risk did not persist after discontinuation of administration, and that it was not enhanced by long continued administration." Dr. Wendel explained that no conclusion regarding long-continued use of the pill could be drawn from this study, because the subjects in this study took the pill for only two years or less. Giving plaintiff the benefit of this testimony and accepting it as true, Dr. Wendel opined only that the validity of this quoted warning statement, setting forth the results of the American study, was restricted; there was no evidence or opinion that long-continued administration of the pill did enhance the risk. Moreover, the warnings must be viewed as a whole. The package inserts from 1969 on clearly warn that use of the product causes thrombophlebitis and pulmonary embolism. This conclusion is unavoidable, even giving plaintiff the benefit of all her evidence and the favorable inferences which could reasonably be drawn therefrom.
We perceive no "watering down" of the warning in the instant case, unlike Tinnerholm v. Parke, Davis & Co., 285 F. Supp. 432 (S.D.N.Y. 1968), mod. 411 F.2d 48 (2 Cir.1969), on which plaintiff relies. In addition, the evidence was inadequate to support plaintiff's theory of over-promotion of Ortho-Novum, which would nullify the effect of the warnings. Salmon v. Parke, Davis & Company, 520 F.2d 1359, 1363 (4 Cir.1975), and Incollingo v. Ewing, 444 Pa. 263, 299, 282 A.2d 206 (Sup.Ct. 1971). The only evidence of over-promotion were two ads in the Journal of the American Medical Association, each accompanied by full reproduction of the package insert warnings and free samples which defendant Ortho gave to the prescribing doctor. This is insufficient to show over-promotion.
The record also discloses that plaintiff consciously chose to try her case on the theory that the 1970 warnings were insufficient, despite her allegation that she had been ingesting Ortho-Novum since some time in 1967. That choice obviously sought to avoid *610 the "state of the art" existing in 1967 which did not include knowledge of the side effects available in 1970. Trial strategy cannot be the basis for a reversal under these circumstances.
In addition, we note that plaintiff's treating physician, Dr. Galindo, who was voluntarily dismissed from the action before trial, testified that he was well aware of the side effects possible from ingestion but that he prescribed the product anyway.
Affirmed.