OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 Plaintiffs decedent, Eugene Martin, became severely depressed after ingesting reserpine and hydrochlorothiazide
 
 *6
 
 (HCT), manufactured by defendant Chelsea Laboratories (Chelsea) and prescribed by defendant Dr. Hacker to treat his hypertension. The depression allegedly led to Martin’s suicide. The issue here is whether the warning regarding the adverse reaction of drug-induced depression resulting in suicide is adequate as a matter of law. For the reasons stated below, we hold that there are no triable issues of fact regarding the warning provided to physicians by the package inserts accompanying these prescription drugs and that the warning is legally sufficient. Accordingly, there should be an affirmance.
 

 I
 

 There is evidence in the moving papers and the depositions that in November 1981, Eugene Martin came under the care of defendant Arthur Hacker, a licensed physician, who treated Martin for hypertension by prescribing HCT. In May 1982, while continuing the HCT prescription, Hacker also prescribed reserpine for Martin to help reduce his high blood pressure. Dr. Hacker advised Martin of the following side effects of reserpine: potassium deficiency, lethargy and weakness, stuffy nose, depression, loss of libido, nausea, vomiting and diarrhea. He also advised Martin that reserpine could produce depression but usually would not do so in the small dosage that he was prescribing.
 

 In August 1982, Martin was hospitalized for pneumonia and came under the care of defendant Dr. George Jolly who prescribed HCT for Martin. Dr. Jolly knew that Martin had been taking reserpine before being hospitalized but he took no action regarding this drug; he neither prescribed it nor gave any advice concerning its continuance or its side effects. Martin became severely depressed and on February 13, 1983 he shot himself.
 

 Chelsea’s package insert for reserpine states in relevant part:
 

 "actions: * * * Reserpine, like other rauwolfia compounds, is characterized by slow onset of action and sustained effects. Both cardiovascular and central nervous system effects may persist for a period of time following withdrawal of the drug. "indications: Mild essential hypertension; also useful as adjunctive therapy with other antihypertensive agents in the more severe forms of hypertension * * *
 

 "contraindications: Known hypersensitivity, mental depression (especially with suicidal tendencies),
 
 *7
 
 active peptic ulcer, ulcerative colitis, and patients receiving electroconvulsive therapy.
 

 "warnings: Extreme caution should be exercised in treating patients with a history of mental depression. Discontinue the drug at first sign of despondency, early morning insomnia, loss of appetite, impotence, or self-deprecation. Drug-induced depression may persist for several months after drug withdrawal and may be severe enough to result in suicide.
 

 "adverse reactions: Rauwolfia preparations have caused gastrointestinal reactions including hyper-secretion, nausea, vomiting, anorexia, and diarrhea; cardiovascular reactions * * *; central nervous system reactions include drowsiness, depression, nervousness, paradoxical anxiety, nightmares, rare parkinsonian syndrome * * * Nasal congestion is a frequent occurrence * * * [several other reactions are reported]. These reactions are usually reversible and usually disappear after the drug is discontinued.”
 

 The relevant sections of Chelsea’s package insert for HCT read:
 

 "indications: * * * For Oral Forms Only: Hydrochlorothiazide is indicated in the management of hypertension either as the sole therapeutic agent or to enhance the effectiveness of other antihypertensive drugs in the more severe forms of hypertension.
 

 "warnings: * * * Hydrochlorothiazide may add to or potentiate the action of other antihypertensive drugs.”
 

 Plaintiff Cynthia Martin, decedent’s widow and executrix, commenced this action against several defendants. This appeal, however, concerns only Chelsea, the manufacturer of reserpine and HCT, and Rugby Laboratories (Rugby), Chelsea’s distributor of these drugs. Plaintiff alleged that as a result of Martin’s ingestion of reserpine and HCT he became despondent and committed suicide; no issue is raised as to this allegation. As to these defendants, plaintiff alleged a breach of their duties to adequately warn
 
 both
 
 the medical profession
 
 and
 
 the ultimate user of the medications’ adverse side effects. After serving their answers, Chelsea and Rugby moved for summary judgment, arguing that there was no triable issue of fact regarding the adequacy of the warnings in describing the adverse effects of these drugs.
 

 
 *8
 
 Supreme Court granted Chelsea’s motion to the extent of dismissing plaintiffs 15th and 16th causes of action that alleged failure to warn the ultimate user. It denied the rest of Chelsea’s motion as well as Rugby’s entire motion. The Appellate Division modified, ruling that "Supreme Court incorrectly found that triable issues of fact were presented concerning the issue of whether the warnings provided by defendants regarding reserpine and HCT to the medical profession were adequate”
 
 (Martin v Hacker,
 
 185 AD2d 553, 554) and concluding that "defendants are entitled to summary judgment” because "the warnings were adequate as a matter of law”
 
 (id.,
 
 at 555). We granted leave to appeal and now affirm.
 

 II
 

 At issue is the nature and extent of a prescription drug manufacturer’s obligation to make known the potential hazards of its products. The claims against defendants Chelsea and Rugby are framed in terms of strict products liability.
 
 [1]
 
 Although a prescription drug is by its nature an inherently unsafe product and would in the usual case impute strict liability to its manufacturer, a defense is provided against such liability when the drug is " 'properly prepared, and accompanied by proper directions and warning’ ”
 
 (Wolfgruber v Upjohn Co.,
 
 72 AD2d 59, 61,
 
 affd
 
 52 NY2d 768 [quoting Restatement (Second) of Torts § 402 A, comment
 
 k]; see generally,
 
 Rheingold, Products Liability — The Ethical Drug Manufacturer’s Liability, 18 Rutgers L Rev 947 [1964]; 2 Frumer and Friedman, Products Liability § 12.14, at 12-147 to 12-149 [1993 revision & July 1993 Cum Supp]). Therefore, even though its side effects may cause injury, a prescribed drug, accompanied by adequate warnings, is " 'not defective, nor is it unreasonably dangerous’ ”
 
 (Wolfgruber, supra,
 
 at 61). The comment
 
 k
 
 defense is unavailable for products negligently manufactured, negligently distributed or unaccompanied by proper warnings
 
 (see generally,
 
 6 Speiser, Krause and Cans, American Law of Torts § 18:383, at 1110 [1st ed & Mar. 1993 Cum Supp]). The manufacturer’s duty is to warn of all potential dangers in its prescription drugs that it knew, or, in the exercise of reasonable care, should have known to exist
 
 (see, Baker v St. Agnes Hosp.,
 
 70 AD2d 400, 404;
 
 Lindsay v Ortho
 
 
 *9
 

 Pharm. Corp.,
 
 637 F2d 87, 91 [2d Cir 1980];
 
 see also, Davis v Wyeth Labs.,
 
 399 F2d 121, 130 [9th Cir 1968]).
 

 Warnings for prescription drugs are intended for the physician, whose duty it is to balance the risks against the benefits of various drugs and treatments and to prescribe them and supervise their effects. The physician acts as an "informed intermediary”
 
 (see, Wolfgruber, supra,
 
 at 61;
 
 Lindsay, supra,
 
 at 91) between the manufacturer and the patient; and, thus, the manufacturer’s duty to caution against a drug’s side effects is fulfilled by giving adequate warning through the prescribing physician, not directly to the patient
 
 (see, Wolfgruber, supra,
 
 at 61;
 
 Glucksman v Halsey Drug Co.,
 
 160 AD2d 305, 307). The warning must provide sufficient information to that category of prescribing physicians who may be expected to have the least knowledge and experience with the drug
 
 (see, Lindsay, supra,
 
 at 91-92;
 
 see also, Guevara v Dorsey Labs.,
 
 845 F2d 364 [1st Cir 1988] [PR law]).
 

 Manufacturers apprise physicians of dangerous side effects in various ways. The most common are: (1) the inclusion in the Physicians Desk Reference, the annually updated encyclopedia of medications, of a formal description of each of a manufacturer’s drugs; and (2) the manufacturer’s formal warning in the package insert of a prescription drug
 
 (see, e.g., Baker, supra,
 
 at 406-407;
 
 Glucksman, supra,
 
 at 307;
 
 see also, Lindsay, supra,
 
 at 92). Inserts must be written in accordance with the Food and Drug Administration’s recommendation for the proper labeling of prescription drugs
 
 (see,
 
 21 CFR 201.56, 201.57; 21 USC § 355 [e]), which as of April 1, 1979 specified that the package insert shall list the following kinds of information in this sequence:
 

 DESCRIPTION ACTIONS INDICATIONS CONTRAINDICATIONS WARNINGS PRECAUTIONS ADVERSE REACTIONS DOSAGE & ADMINISTRATION OVERDOSAGE (WHERE APPLICABLE) HOW SUPPLIED
 
 [2]
 

 
 *10
 
 The Contraindications section includes the most stringent caveats against use, i.e., a statement of the conditions under which the drug
 
 is not to be used (see, e.g., Baker, supra,
 
 at 402). Each succeeding section, especially from Contraindications to Adverse Reactions, sets forth information and admonitions pertaining to the drug’s use in a descending order of importance and seriousness of the attendant risks; thus, for example, the Warnings section deals with side effects of graver consequence than the Adverse Reactions section
 
 (see, McFadden v Haritatos,
 
 86 AD2d 761, 762).
 

 Ill
 

 A warning for a prescription drug may be held adequate as a matter of law
 
 [3]
 
 if it provides specific detailed information on the risks of the drug
 
 (Wolfgruber, supra,
 
 at 61-62;
 
 and see,
 
 Restatement [Second] of Torts § 402 A, comment
 
 k).
 
 Whether a given warning is legally adequate or presents a factual question for resolution by a jury requires a careful analysis of the warning’s language. The court must examine not only the meaning and informational content of the language but also its form and manner of expression. Always bearing in mind that the warning is to be read and understood by physicians, not laypersons, the factors to be considered in resolving this question include whether the warning is accurate, clear, consistent on its face, and whether it portrays with sufficient intensity the risk involved in taking the drug
 
 (see, Felix v Hoffmann-LaRoche, Inc.,
 
 540 So 2d 102, 105 [Fla 1989];
 
 Up
 
 
 *11
 

 john Co. v MacMurdo,
 
 562 So 2d 680, 682 [Fla 1990];
 
 Williams v Ciba-Geigy Corp.,
 
 686 F Supp 573, 579 [WD La 1988]).
 

 It is basic that a warning "must be commensurate with the risk involved in the ordinary use of the product”
 
 (Cooley v Carter-Wallace, Inc.,
 
 102 AD2d 642, 645). Thus, analysis logically starts with an ascertainment of the seriousness of the involved risk
 
 (see,
 
 2 Products Liability,
 
 op. cit.,
 
 § 12.03, at 12-30; 3 American Law of Products Liability 3d § 33:8, at 21-22 [Matthew J. Canavan ed, 1993 revision];
 
 see also, Wolfgruber, supra,
 
 at 62-63;
 
 Baker, supra,
 
 at 407;
 
 Fane, supra,
 
 at 129;
 
 Jones, supra,
 
 at 706). Seriousness depends on the consequences of the side effects
 
 (see,
 
 3 American Law of Products Liability 3d,
 
 op. cit.,
 
 § 33:12, at 27; § 33:4, at 16;
 
 Williams, supra,
 
 at 578-579). Here, there is no question that the level of the risk is the highest, death from suicide. Accordingly, the adequacy of the package insert for reserpine must be evaluated as a warning of a risk of the most serious degree.
 

 Once the general level of risk is established, the court should evaluate the insert’s language for its accuracy, clarity and relative consistency
 
 (see, Felix, supra,
 
 at 105;
 
 MacMurdo, supra,
 
 at 682;
 
 Williams, supra,
 
 at 579;
 
 see generally,
 
 3 American Law of Products Liability 3d,
 
 op. cit.,
 
 §§ 33:1 to 33:13, at 11-29). For a warning to be accurate it must be correct, fully descriptive and complete
 
 (see, Wolfgruber, supra,
 
 at 62), and it must convey updated information as to all of the drug’s known side effects
 
 (see, Baker, supra,
 
 at 406;
 
 see also, Cooley, supra,
 
 at 646; 2 Weinberger, Products Liability § 28.10, at 11). In this case, no issue is raised with respect to the correctness or completeness of the reserpine warning.
 

 Clarity in the context of a drug warning means that the language of the warning is direct, unequivocal and sufficiently forceful to convey the risk
 
 (see,
 
 3 American Law of Products Liability 3d,
 
 op. cit.,
 
 §§ 33:10 to 33:12, at 24-28;
 
 see also, Cooley, supra,
 
 at 646;
 
 Sterling Drug v Yarrow,
 
 408 F2d 978, 994 [8th Cir 1969];
 
 see, e.g., Bloxom v Bloxom,
 
 512 So 2d 839, 850 [La]). A warning that is otherwise clear may be obscured by inconsistencies or contradictory statements made in different sections of the package insert regarding the same side effect or from language in a later section that dilutes the intensity of a caveat made in an earlier section
 
 (see, McFadden, supra,
 
 at 763). Such contradictions will not create a
 
 *12
 
 question of fact as to the warning’s adequacy, if the language of a particular admonition against a side effect is precise, direct, and unequivocal and has sufficient force. The clarity of the over-all warning may in such instances offset inconsistencies elsewhere in an insert
 
 (see, e.g., Fane, supra,
 
 at 129;
 
 MacMurdo, supra,
 
 at 682).
 

 Finally, a court should consider the warning as a whole
 
 (see, Jones, supra,
 
 at 708;
 
 Guevara, supra,
 
 at 366). While a meticulous examination and parsing of individual sentences in the insert may arguably reveal differing nuances in meaning or variations in emphasis as to the seriousness of a side effect, any resulting vagueness may be overcome if, when read as a whole, the warning conveys a meaning as to the consequences that is unmistakable.
 

 IV
 

 Plaintiff argues that the warning provided in the package insert here does not meet the standard for legal adequacy, primarily for three reasons: (1) there is ambiguity in the Warnings section as to the category of user at risk for suicide; (2) the Adverse Reactions section dilutes the caveat about suicide found in the Warnings section; and (3) there is an insufficient caveat against an increased risk of suicide when reserpine is used with HOT. Since it is undisputed that Martin had no history of mental depression, we are not concerned with the adequacy of the Contraindications section of the insert
 
 (see, McFadden, supra,
 
 at 762).
 

 A
 

 Plaintiff’s first contention is that the Warnings section contains an ambiguity as to whether it applies to all users or only to those with a history of mental depression. The Warnings section contains the following three declaratory sentences:
 

 (1) "Extreme caution should be exercised in treating patients with a history of mental depression.”
 

 (2) "Discontinue the drug at first sign of despondency, early morning insomnia, loss of appetite, impotence, or self-depreciation.”
 

 (3) "Drug-induced depression may persist for several months after drug withdrawal and may be severe enough to result in suicide.”
 

 Plaintiff asserts that the direction in the second sentence that
 
 *13
 
 the drug should be discontinued at "first sign of despondency * * * or self-deprecation” and the admonition in the third sentence that "[d]rug-induced depression may persist * * * after drug withdrawal and may be severe enough to result in suicide” apply
 
 not to
 
 users with drug-induced depression generally
 
 but only to
 
 the class of users described in the first sentence who have a history of mental depression. We disagree. The third sentence of this section — "[d]rug-induced depression may persist * * * and may be severe enough to result in suicide” — is direct, unqualified, and unequivocal. Its plain meaning is that drug-induced depression in any user— not just in patients with a history of mental depression — may persist, even after drug withdrawal, and be so severe as to cause suicide. It would defy common sense and subvert the clear intendment of the third sentence to read it as limited by the first sentence of this section. We decline to adopt the view of the
 
 McFadden
 
 Court that the Warnings section of the insert applied only to patients with a history of mental depression.
 

 B
 

 Relying on
 
 McFadden
 

 [4]
 

 plaintiff next contends that the language in the Adverse Reactions section dilutes the caveat in the Warnings section regarding suicide due to drug-induced depression. Insofar as relevant, the Adverse Reactions section provides:
 

 "Rauwolfia preparations have caused gastrointestinal reactions including hypersecretion, nausea vomiting, anorexia, and diarrhea; cardiovascular reactions * * *;
 
 central nervous system reactions include drowsiness, depression, nervousness paradoxical anxiety, nightmares, rare parkinsonian syndrome
 
 * * * Nasal congestion is a frequent occurrence * * * [several other systemic reactions including hematologic reactions, muscular aches, rash, dizziness and weight gain are reported].
 

 These reactions are usually reversible and usually disappear after the drug is discontinued”
 
 (emphasis added).
 

 
 *14
 
 Plaintiff’s argument is that the statement in the last sentence quoted above that the reactions are "usually reversible” and "usually disappear” becloud the meaning of the Warnings section and detract from the forcefulness and intensity of what would otherwise be an unmistakable admonition against depression-induced suicide in that section. Again we disagree.
 

 The last sentence in the Adverse Reactions section, it should be noted, does not pertain to the nature or the seriousness of the reaction but to its usual duration. The information that a reaction is
 
 usually
 
 reversible and
 
 usually
 
 disappears — i.e., that it is not permanent — says nothing about the reaction’s dangerousness while it persists. Thus, the last sentence does not contradict the unequivocal and straightforward statement in the Warnings section that drug-induced depression "may be severe enough to result in suicide”. Nor does the knowledge that the depression reaction may be reversible and disappear affect the forcefulness and intensity of the admonition that this reaction, while in its active state, may result in suicide.
 

 Moreover, assuming for the sake of argument only that the last sentence in the Adverse Reactions section could create some ambiguity as to the postwithdrawal persistence of the drug’s reactions,
 
 [5]
 
 this is plainly counterbalanced by the following language in the Actions section of the insert:
 

 "Reserpine like other rauwolfia compounds, is characterized by slow onset of action and sustained effects. Both cardiovascular and
 
 central nervous system effects may persist for a period of time following withdrawal of the drug”
 
 (emphasis added).
 

 The consistent and clear statements in the Actions and Warnings sections of the insert concerning the postwithdrawal persistence of side effects after reserpine withdrawal negate the effect of whatever ambiguity could arguably result from the language in the Adverse Reactions section.
 

 Finally, the Warnings section and the Adverse Reactions section, taken together with the Actions section, are sufficient to convey to any reasonably prudent physician an unambiguous and consistent message that reserpine is a slow-acting drug persisting in body tissue after withdrawal and that reserpine-induced depression may lead to postwithdrawal sui
 
 *15
 
 cide but that such depression usually disappears after withdrawal. Thus, the warning of the insert as a whole comports exactly with the risk of taking reserpine
 
 (see, e.g., Jones, supra,
 
 at 708;
 
 Guevara, supra,
 
 at 366). Again, we disagree with the
 
 McFadden
 
 Court, which held that the dilution of the Warnings section created by the last sentence of the Adverse Reactions section raised a factual issue.
 

 C
 

 Plaintiffs final claim is that the reserpine insert does not warn with sufficient intensity of the fact that ingesting both HCT and reserpine to control hypertension may exacerbate the adverse side effects of reserpine. Plaintiff argues that the reserpine insert does not clearly identify the general level of risk of this drug when taken in conjunction with HCT. This claim is meritless.
 

 The Dosage & Administration section states in part that "[cjoncomitant use of Reserpine with [other drugs] necessitates careful titration of dosage with each agent”. In other words, the physician is warned that prescribing reserpine with other drugs
 
 requires
 
 the physician’s care and attention because the dosage of reserpine as recommended in this section may have to be modified, depending on the concomitantly prescribed drug. Additionally, the HCT package insert supplies a forewarning that "Hydrochlorothiazide may add to or potentiate the action of other antihypertensive drugs”. Since the reserpine insert states that the action of reserpine would "persist for a period of time following withdrawal of the drug” and that drug-induced depression after withdrawal "may be severe enough to result in suicide”, when read together the reserpine and the HCT package inserts plainly and directly alert the physician to HCT’s action in heightening the side effects of reserpine
 
 (see, e.g., Ashman v SK & F Lab Co.,
 
 702 F Supp 1401, 1405).
 

 In sum, Chelsea has established that the reserpine package insert contains language which, on its face, adequately warns against the precise risk in question, i.e., depression-caused suicide. Plaintiff has not come forward with any evidentiary facts or adverted to any portions of the package insert demonstrating that a factual issue exists as to the warning’s adequacy. Summary judgment dismissing the complaint against defendant Chelsea and defendant Rugby was, therefore, properly granted
 
 (see, Friends of Animals v Associated Fur Mfrs.,
 
 
 *16
 
 46 NY2d 1065, 1067-1068). Given this holding, we do not address defendants’ additional argument that summary judgment was warranted in view of plaintiffs failure to demonstrate the existence of factual issues pertaining to the causal connection between the allegedly defective warning and decedent’s depression-caused suicide
 
 (see, Lindsay, supra,
 
 at 91;
 
 Jones, supra,
 
 at 708).
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent
 
 (see, Wolfgruber v Upjohn Co.,
 
 72 AD2d 59, 62,
 
 affd
 
 52 NY2d 768,
 
 supra).
 

 [2]
 

 . Commencing on June 26, 1979, the recommended format of labeling was amended at various times in certain respects that are not relevant here
 
 (see,
 
 44 Fed Reg 37462 [actions changed to clinical pharmacology; and drug abuse heading added]).
 

 [3]
 

 . Although, as plaintiff contends, some New York decisions have concluded that as to particular warnings the issue of adequacy presents a question of fact to be resolved by the jury
 
 (see, e.g., Bikowicz v Nedco Pharmacy,
 
 130 AD2d 89;
 
 Baker, supra,
 
 at 408;
 
 McFadden, supra,
 
 at 763), other New York decisions, in addition to
 
 Wolfgruber,
 
 have resolved the issue of a warning’s adequacy as a matter of law
 
 (see, Glucksman, supra,
 
 at 308;
 
 Eiser v Feldman,
 
 123 AD2d 583, 584;
 
 see also, Fane v Zimmer, Inc.,
 
 927 F2d 124 [2d Cir 1991] [New York law];
 
 Jones v Lederle Labs.,
 
 695 F Supp 700 [ED NY 1988] [New York law]).
 

 Courts in other jurisdictions have also determined warnings to be adequate as a matter of law
 
 (see, e.g., Plummer v Lederle Labs.,
 
 819 F2d 349 [2d Cir 1987] [Cal law];
 
 Guevara v Dorsey Labs., supra
 
 [PR law];
 
 Ferrara v Berlex Labs.,
 
 732 F Supp 552 [ED Pa 1990];
 
 Williams v Ciba-Geigy Corp.,
 
 686 F Supp 573 [WD La 1988];
 
 Weinberger v Bristol-Myers Co.,
 
 652 F Supp 187 [D Md 1986];
 
 Goodson v Searle Labs.,
 
 471 F Supp 546 [D Conn 1978];
 
 Brick v Barnes-Hines Pharm. Co.,
 
 428 F Supp 496 [DC 1977];
 
 Felix v Hoffmann-LaRoche, Inc.,
 
 540 So 2d 102 [Fla 1989]).
 

 [4]
 

 .
 
 McFadden v Haritatos
 
 (86 AD2d 761,
 
 supra)
 
 also involved the adequacy of the warning provided by the reserpine package insert. The
 
 McFadden
 
 Court, unlike the Court below in this case, held that the Adverse Reactions section of the reserpine insert presented an issue of fact as to the sufficiency of the insert.
 

 [5]
 

 . There is no showing that Martin had stopped taking reserpine prior to his death. Therefore, any claimed dilution of the statement concerning the drug’s postwithdrawal persistence could not have a
 
 direct causal relationship
 
 to his death, in any event.