891 A.2d 1229 (2006)
383 N.J. Super. 364
Debbie BANNER, and her husband, Kevin Banner, individually and as the Natural Guardians for Devin Banner, a minor, Plaintiffs-Appellants,
v.
HOFFMANN-LA ROCHE INC., and Roche Laboratories Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 2005.
Decided February 28, 2006.
*1230 Brian J. Molloy and Jeffrey J. Brookner, Woodbridge, argued the cause for appellants (Wilentz, Goldman & Spitzer, attorneys; *1231 Mr. Molloy, of counsel and on the brief; Mr. Brookner, on the brief).
Paul W. Schmidt (Covington & Burling) of the District of Columbia and New York bar, admitted pro hac vice, argued the cause for respondents (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys, Newark; Mary Morrissey Sullivan, of counsel and on the brief).
Before Judges WEFING, WECKER and GRAVES.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiffs Debbie and Kevin Banner appeal from trial court orders granting the motion of defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. ("Roche") to dismiss plaintiffs' complaint for failure to state a claim, R. 4:6-2(e), and subsequently denying their motion for reconsideration. After reviewing the record in light of the contentions advanced on appeal, we affirm.
The Banners reside in the State of Virginia and were residents of that state at all times relevant to this litigation, which they filed in New Jersey in January 2003. The Banners have never resided in New Jersey. In this action, they seek damages, both individually and as the natural guardians of their child Devin, who was born with severe physical and cognitive deficits on October 4, 1996. The Banners attribute these deficits to the drug Accutane, which is manufactured and distributed by Roche, whose principal place of business is in New Jersey.
Accutane is a prescription medication developed by Roche and approved by the Food and Drug Administration; it is intended for the treatment of severe disfiguring nodular acne that has been recalcitrant to standard therapies. Accutane is known to be a teratogen, that is, there is an extremely high risk that if the drug is taken by a woman while she is pregnant, her child will be born with severe abnormalities.
In November 1995 Debbie Banner met with her physician and discussed whether Accutane would be an appropriate medication for her. The record does not disclose whether Ms. Banner suffered from severe disfiguring nodular acne or some lesser form of acne. In any event, Ms. Banner's doctor wrote her a prescription for Accutane.
Because of the risks involved if a woman of child-bearing age were to take Accutane, Roche had developed a Pregnancy Prevention Program for physicians to use while discussing with their patients whether Accutane would be an appropriate therapy. Part of this Pregnancy Prevention Program involved having the patient complete a document titled in large, bold type "Patient Information/Consent and Survey Enrollment Form." Roche's protocol called for a physician to review this consent form with the patient and have the patient complete it prior to writing a prescription for Accutane. Ms. Banner's physician utilized this form in connection with reviewing with her the risks attendant to the use of Accutane.
On the top right-hand corner of this form is the silhouette of a pregnant woman, upon which is superimposed a circle, with an angular line descending to the right, the universal pictograph to depict a warning, together with the words, "Pregnancy Prevention Program for Women on Accutane." These words are in bold type and all capital letters. Beneath that, in large italic type, is written "Accutane must not be used by females who are pregnant or who may become pregnant while undergoing treatment."
*1232 We set forth the pertinent provisions of this consent form in detail.
My treatment with Accutane has been personally explained to me by Dr. ______. The following points of information, among others, have been specifically discussed and made clear:
1. I, ______, understand that Accutane is a very powerful medicine used to treat severe nodular acne that did not get better with other treatments, including oral antibiotics.
Initials: ______
2. I understand that I must not take Accutane if I am or may become pregnant during treatment.
Initials: ______
3. I understand that severe birth defects have occurred in babies of women who took Accutane during pregnancy. I have been warned by my doctor that there is an extremely high risk of severe damage to my unborn baby if I am or become pregnant while taking Accutane.
Initials: ______
4. I have been told by my doctor that effective birth control (contraception) must be used for at least 1 month before starting Accutane, all during Accutane therapy and for at least 1 month after Accutane treatment has stopped. My doctor has recommended that I either abstain from sexual intercourse or use two reliable kinds of birth control at the same time. I have also been told that any method of birth control can fail. I must use two forms of reliable birth control simultaneously even if I think I cannot become pregnant, unless I abstain from sexual intercourse or have had a hysterectomy.
INITIALS: ______
5. I know that I must have a blood or urine test done by my doctor that shows I am not pregnant within 1 week before starting Accutane, and I understand that I must wait until the second or third day of my next normal menstrual period before starting Accutane.
INITIALS: ______
6. My doctor has told me that I can participate in the "Patient Referral" program for an initial free pregnancy test and birth control counseling session by a consulting physician.
INITIALS: ______
7. I also know that I must immediately stop taking Accutane if I become pregnant while taking the drug and immediately contact my doctor to discuss the desirability of continuing the pregnancy. I also know that I must immediately contact my doctor if I become pregnant during the month after stopping Accutane.
INITIALS: ______
8. I have carefully read the Accutane patient brochure, "Important Information Concerning Your Treatment With Accutane (isotretinoin)," given to me by my doctor. I understand all of its contents and have talked over any questions I have with my doctor.
INITIALS: ______
9. I am not now pregnant, nor do I plan to become pregnant for at least 30 days after I have completely finished taking Accutane.
INITIALS: ______
10. My doctor has told me that I can participate in a survey concerning Accutane use in women by completing an additional form.
INITIALS: ______
Ms. Banner completed this form, placing her initials after each statement, indicating she had reviewed and understood each section.
At the time Ms. Banner had her prescription filled, Accutane's accompanying *1233 package insert began in the following manner:
CONTRAINDICATION AND WARNING[1]: Accutane must not be used by females who are pregnant or who may become pregnant while undergoing treatment. Although not every fetus exposed to Accutane has resulted in a deformed child, there is an extremely high risk that a deformed infant can result if pregnancy occurs while taking Accutane in any amount even for short periods of time. Potentially any fetus exposed during pregnancy can be affected. Presently there is no accurate means of determining after Accutane exposure which fetus has been affected and which fetus has not been affected.
Accutane is contraindicated in females of childbearing potential unless the patient meets all of the following conditions:

. . .
 is reliable in understanding and carrying out instructions
 is capable of complying with the mandatory contraceptive measures
 has received both oral and written warnings of the hazards of taking Accutane during pregnancy and exposing a fetus to the drug
 has received both oral and written warnings of the risk of possible contraception failure and of the need to use two reliable forms of contraception simultaneously, unless abstinence is the chosen method, or the patient has undergone a hysterectomy and has acknowledged in writing her understanding of these warnings and of the need for using dual contraceptive methods.
 has had a negative serum or urine pregnancy test with a sensitivity of at least 56 mIU/mL within 1 week prior to beginning therapy.
 will begin therapy only on the second or third day of the next normal menstrual period.
The package insert also listed the abnormalities that had been reported in babies who had been exposed to Accutane during their mothers' pregnancies.
Major human fetal abnormalities related to Accutane administration have been documented: CNS abnormalities (including cerebral abnormalities, cerebellar malformation, hydrocephalus, microcephaly, cranial nerve deficit); skull abnormality; external ear abnormalities (including anolia, micropinna, small or absent external auditory canals); eye abnormalities (including microphthalmia); cardiovascular abnormalities; facial dysmorphia; cleft palate; thymus gland abnormality; parathyroid hormone deficiency. In some cases death has occurred with certain of the abnormalities previously noted. Cases of IQ scores less than 85 with or without obvious CNS abnormalities have also been reported. There is an increased risk of spontaneous abortion. In addition, premature births have been reported.
Ms. Banner was twenty-four years old and married at the time she met with her physician. According to plaintiff's initial complaint, she, for religious reasons, elected not to use birth control in any form to prevent a pregnancy. She chose, rather, to remain abstinent while undergoing Accutane treatment.
Ms. Banner, however, did not remain abstinent. She and her husband did engage in unprotected sexual relations. She became pregnant, and their child was born profoundly disabled.
*1234 Ms. Banner received her prescription for Accutane in Virginia, from a physician licensed by that state. She purchased the medication in Virginia and consumed it there. Her child was conceived in Virginia and born there in October 1996.
The Banners commenced suit in New Jersey in 2003, asserting a variety of theories against Roche. All of these theories, however, revolve around their fundamental premise that the warnings supplied by Roche were inadequate because Roche did not inform Ms. Banner that abstinence by itself was an unreliable method to prevent pregnancy. Plaintiffs assert that Roche knew or should have known that women of child-bearing age who were married or sexually active were unlikely to remain abstinent. According to plaintiffs, Roche should have warned that all women of child-bearing age who were married or sexually active should use two forms of birth control, even if they indicated an intent not to engage in sexual activity while taking Accutane. Plaintiffs also asserted that Roche was at fault for not restricting the physicians authorized to prescribe Accutane. They pointed to a registry program instituted by another pharmaceutical company, Celgene, in connection with that company's distribution of thalidomide, another teratogen, which had proved useful in treating multiple myelomas and leprosy. Plaintiffs have asserted no claim against the physician who prescribed Accutane for Ms. Banner.
Roche moved to dismiss plaintiffs' complaint in September 2003. Its motion was premised upon several grounds. It asserted that the claim of the Banners individually was barred by the statute of limitations and that the warnings Roche provided in connection with Accutane were adequate as a matter of law. Roche also contended that the Banners' claims were governed by Virginia law and further asserted that Virginia does not recognize a claim for wrongful life, thus requiring dismissal of the claim asserted by the Banners on behalf of their child.
The parties agreed upon a stipulation of facts relating to the question of choice of law. They then filed their briefs, and the court heard extensive oral argument from counsel. At the conclusion of that argument, the trial court gave an oral decision, reciting its reasons for granting Roche's motion. It concluded that the individual claims asserted by plaintiffs were barred by the statute of limitations. It further ruled that the matter was governed by Virginia law, as that state had the predominant interest in the matter, and that Virginia, in contrast to New Jersey, does not recognize a cause of action for wrongful birth. Accordingly, the trial court dismissed the claim asserted on behalf of Devin. For purposes of completeness, the trial court also addressed the adequacy of the warnings provided by Roche. It determined that whether the matter were analyzed under New Jersey law or Virginia law, the warnings were adequate as a matter of law. On appeal, plaintiffs challenge those determinations.

I
Before proceeding to the particular questions before us, we note that the matter was presented to the trial court on a motion to dismiss for failure to state a claim. Such motions, according to the Supreme Court, "should be granted in `only the rarest [of] instances.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 165, 876 A.2d 253 (2005) (quoting Lieberman v. Port Auth. of N.Y. & N.J., 132 N.J. 76, 79, 622 A.2d 1295 (1993)). Our review of the trial court's determination to grant defendant's motion is guided by the same standard that governed the trial court's initial analysis.

*1235 We approach our review of the judgment below mindful of the test for determining the adequacy of a pleading: whether a cause of action is "suggested" by the facts. In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. However, a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary. . . ." For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.
[Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (citations omitted).]

II
As the appellants have framed the question before us, the critical issue is the trial court's determination that the warnings provided by Roche in connection with Accutane were adequate as a matter of law. Appellants assert that there is no substantive difference between the law of New Jersey and the law of Virginia on the issue of the adequacy of those warnings. Accordingly, they assert that the law of New Jersey, as the forum state, shapes the analysis on the issue of the adequacy of the warnings supplied by Roche. Roche contends that the law of Virginia is applicable to this matter because Virginia has the greatest contacts and the dominant interest. Erny v. Estate of Merola, 171 N.J. 86, 792 A.2d 1208 (2002); Gantes v. Kason Corp., 145 N.J. 478, 679 A.2d 106 (1996). It also asserts, however, that its warnings were adequate, whether measured by the law of New Jersey or of Virginia.
If the warnings were adequate as a matter of law, it is immaterial whether the Banners asserted their claim within the requisite period of limitations and whether the claim they assert on behalf of their child is governed by the law of New Jersey, which recognizes a claim for wrongful life, Procanik v. Cillo, 97 N.J. 339, 478 A.2d 755 (1984), or the law of Virginia, which Roche asserts does not recognize such a cause of action. Barnes v. Head, 30 Va. Cir. 218 (1993). We, thus, focus our analysis on the warnings Roche provided in connection with Accutane. We assume, without deciding the question, that for purposes of this analysis plaintiffs are correct that New Jersey law applies.

A
Product liability actions in New Jersey are governed by our Products Liability Act, N.J.S.A. 2A:58C-1 to -11. The Act governs "action[s] brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). Plaintiffs do not allege a breach of an express warranty, and their suit is, thus, subject to the provisions of the statute.
The statute provides that a manufacturer or seller of a product is liable for harm caused by a product that is "not reasonably fit, suitable or safe for its intended purpose" as a result of a manufacturing defect, a design defect or a failure "to contain adequate warnings or instructions." N.J.S.A. 2A:58C-2. Plaintiffs' claim against Roche is, as we have noted, premised on this latter theory.
*1236 Our statute defines what constitutes an adequate warning.
An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used, or in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician.
[N.J.S.A. 2A:58C-4.]
A product warning or instruction that does not comport with this statutory requirement is defective.
Our statute incorporates the "learned intermediary" doctrine under which a pharmaceutical manufacturer generally fulfills its duty to warn the ultimate user of its prescription drug, such as Ms. Banner, when it supplies physicians with adequate information about a drug's dangerous propensities. Provenzano v. Integrated Genetics, 22 F.Supp.2d 406 (D.N.J.1998); Niemiera v. Schneider, 114 N.J. 550, 558-62, 555 A.2d 1112 (1989).
The only exception to the learned intermediary doctrine in New Jersey arises when a pharmaceutical company has advertised its drug directly to the consuming public. Perez v. Wyeth Labs., Inc., 161 N.J. 1, 734 A.2d 1245 (1999). Plaintiffs contend that the learned intermediary rule does not apply to this matter. They point to Roche's alleged practice of supplying brochures to doctors' offices and placement of non-branded ads in magazines. They also point to Roche having developed the Pregnancy Prevention Program. Plaintiffs assert these activities constitute direct-to-consumer advertising under Perez, thus imposing upon Roche a duty to supply adequate warnings not only to Ms. Banner's physician but also to Ms. Banner herself.
Plaintiffs, in our view, read Perez too broadly. The Court in Perez considered whether the defendant, which manufactured and distributed Norplant, an implanted, reversible contraceptive designed to prevent pregnancy for up to five years, could invoke the learned intermediary doctrine to defend against claims it had failed to provide adequate warnings of Norplant's side effects. Id. at 5, 734 A.2d 1245. The majority of the Court concluded that defendant was not entitled to the benefit of the learned intermediary doctrine, but rested its conclusion upon the dramatic shift that had occurred in the nature of marketing of prescription medications, from advertisements directed solely to the prescribing physicians to advertisements directed to the consuming public and intended to induce the patient to request a particular medication from the doctor. Id. at 30-31, 734 A.2d 1245. The Court stressed the mass nature of such advertising, involving television, radio, magazines and newspapers. Id. at 12-13, 734 A.2d 1245. In our judgment, the placement of informational brochures in a physician's office cannot fairly be equated with a course of mass advertising or be deemed direct-to-consumer advertising so as to remove the predicates of the learned intermediary doctrine. Our conclusion in this regard is bolstered by 21 C.F.R. § 202.1(k)(2), which does not treat such material as advertising, but as labeling.
Further, the material developed by Roche as part of its Pregnancy Prevention Program does not, in our judgment, constitute direct-to-consumer advertising. Within their complaint, plaintiffs point specifically to the "Patient Information/Consent *1237 and Survey Enrollment Form," as an example of a direct communication with the consumer that warrants obviating the learned intermediary rule. We do not agree. As the text of the form makes clear, it is intended to memorialize the information supplied to the patient by the prescribing physician.
We are cognizant, as we have earlier stated, that the question was presented to the trial court by defendants' motion to dismiss and that if allegations in a complaint are legally insufficient at that stage, plaintiffs may be afforded an opportunity to file an amended complaint. Printing Mart, supra, 116 N.J. at 772, 563 A.2d 31.
From an abundance of caution, therefore, we choose to analyze the adequacy of the warnings provided by Roche from the perspective of the patient, as opposed to the physician. Clearly, if the warnings were adequate as to her, they were adequate as to her doctor who prescribed the medication in the first instance.
In our judgment, the warnings Roche supplied were adequate as a matter of law, whether the warnings are viewed from the perspective of Ms. Banner herself or her physician who wrote the prescription. Roche satisfied its duty to warn of the dangers attendant to Accutane therapy, whether Roche owed a duty to Ms. Banner or to her physician.

B
We acknowledge that ordinarily, the question of whether a warning is adequate is one for a jury to resolve. Levey v. Yamaha Motor Corp., U.S.A., 361 N.J.Super. 312, 318, 825 A.2d 554 (App. Div.2003); Prince v. Garruto, Galex & Cantor, 346 N.J.Super. 180, 185, 787 A.2d 245 (App.Div.2001). That principle, however, is not a rigid mantra, to be applied inexorably in all situations and contexts.
Even in the context of prescription drugs, the adequacy of a warning may be determined as a matter of law. In Spinden v. Johnson & Johnson, 177 N.J.Super. 605, 427 A.2d 597 (App.Div.), certif. denied, 87 N.J. 376, 434 A.2d 1061 (1981), plaintiff Doris Spinden took birth control pills manufactured by defendants and developed thrombophlebitis and a pulmonary embolism. Id. at 606, 427 A.2d 597. She sued for damages, alleging that the warnings contained in the package insert were inadequate. Ibid. The trial court dismissed the matter at the end of the plaintiff's case, ruling that the warnings were adequate. Ibid. The package insert in question stated that "[a]n increased risk of thrombo-embolic disease associated with the use of hormonal contraceptives has now been shown in studies conducted in both Great Britain and the United States." Id. at 607, 427 A.2d 597. The insert also noted the statistical increase in thrombo-embolic disease among users of such contraceptives. Ibid. We affirmed the trial court's conclusion that these warnings were adequate. Ibid.
The precedential value of Spinden is not lessened because it was decided prior to the adoption of the Product Liability Act. The substantive standards under the common law and under the statute in terms of a claim of inadequate warning are identical. Dreier, Keefe, & Katz, Current N.J. Products Liability & Toxic Torts Law, § 15:3-1(a) (2006).
Other courts also have ruled, in appropriate cases, that a particular warning provided was adequate as a matter of law. In Martin v. Hacker, 83 N.Y.2d 1, 607 N.Y.S.2d 598, 628 N.E.2d 1308 (1993), the New York Court of Appeals considered "whether the warning regarding the adverse reaction of drug-induced depression resulting in suicide is adequate as a matter of law." Id. at 6, 607 N.Y.S.2d 598, 628 *1238 N.E.2d 1308. Plaintiff's decedent had been prescribed two medications for treatment of hypertension, including reserpine. Ibid. The package insert for reserpine stated:
WARNINGS: Extreme caution should be exercised in treating patients with a history of mental depression. Discontinue the drug at first sign of despondency, early morning insomnia, loss of appetite, impotence, or self-deprecation. Drug-induced depression may persist for several months after drug withdrawal and may be severe enough to result in suicide.
[Id. at 7, 607 N.Y.S.2d 598, 628 N.E.2d 1308.]
After some months of taking the medication, plaintiff's decedent became profoundly depressed and shot himself. Id. at 6, 607 N.Y.S.2d 598, 628 N.E.2d 1308.
The court noted that a "warning for a prescription drug may be held adequate as a matter of law if it provides specific detailed information on the risks of the drug." Id. at 10, 607 N.Y.S.2d 598, 628 N.E.2d 1308. The court described the task before it in the following manner:
Whether a given warning is legally adequate or presents a factual question for resolution by a jury requires a careful analysis of the warning's language. The court must examine not only the meaning and informational content of the language but also its form and manner of expression.
[Ibid.]
It then set forth a three-step analytical framework, starting with "an ascertainment of the seriousness of the involved risk." Id. at 11, 607 N.Y.S.2d 598, 628 N.E.2d 1308. Here, the risk of bearing a profoundly malformed and disabled child is most serious. The second step, according to the court, is an evaluation of the language "for its accuracy, clarity and relative consistency. . . . Clarity in the context of a drug warning means that the language of the warning is direct, unequivocal and sufficiently forceful to convey the risk." Ibid. We have earlier set forth in detail the format and language used by Roche; we have no hesitancy in concluding that it is, indeed, direct, unequivocal and forceful. The final step, said the court, is a consideration of the warning as a whole, to determine "if, when read as a whole, the warning conveys a meaning as to the consequences that is unmistakable." Id. at 12, 607 N.Y.S.2d 598, 628 N.E.2d 1308. As with the second step, we are satisfied that the warnings supplied by Roche as to consequences of becoming pregnant while using Accutane are unmistakable.
The Florida Supreme Court has also held that the adequacy of warning accompanying a prescription drug may be ruled on as a question of law; it did so, moreover, in a case arising from the use of Accutane. Felix v. Hoffmann-La Roche, 540 So.2d 102 (1989). The plaintiff in that case received a prescription for Accutane shortly after its initial approval by the Food and Drug Administration. Id. at 103. The package insert did not contain the detailed information that was provided in the present matter. It stated
Because teratogenicity has been observed in animals . . . patients who are pregnant or intend to become pregnant while undergoing treatment should not receive Accutane. Women of childbearing potential should not be given Accutane unless an effective form of contraception is used, and they should be fully counseled on the potential risks to the fetus should they become pregnant while undergoing treatment.
[Ibid.]
The Florida Supreme Court held that the warning was "accurate, clear, and unambiguous" and, thus, adequate as a matter *1239 of law. Id. at 105. See also Childers v. Hoffmann-La Roche, 540 So.2d 102 (1989).
Other courts have also found the warnings accompanying Accutane to be adequate as a matter of law. The year after the Felix decision, the Eastern District of Louisiana held that a set of Accutane warnings delivered in conjunction with a 1988 prescription were "accurate, clear, and unambiguous." Bealer v. Hoffman[n]-La Roche, 729 F.Supp. 43, 44-45 (E.D.La.1990). Citing Felix, the court rejected the arguments of a plaintiff who had undergone a therapeutic abortion because her unborn child had been exposed to Accutane, and had claimed that Roche's warnings of this possibility were insufficient. Ibid.
The court disagreed and found that the warning to physicians and patients accompanying Accutane prescriptions at that time were "even more explicit than those adjudged sufficient" before the Florida Supreme Court. Id. at 45. Specifically, the improved warnings, as illustrated by a brochure labeled "Important Information Concerning Your Treatment with Accutane," stated that birth defects were "known to occur in infants of women taking Accutane during pregnancy." Ibid. The warnings had also been strengthened by clearly stating when women should begin taking Accutane and by declaring that one form of birth control must be used immediately before and during the treatment. Ibid. These warnings were introduced by the following, bold print statements: "WARNING TO FEMALE PATIENTS. YOU MUST NOT TAKE ACCUTANE IF YOU ARE OR MAY BECOME PREGNANT DURING TREATMENT." Ibid.
Based on the quality and extent of the warnings in that brochure and in other materials that the dermatologist had in his possession at the time the plaintiff received her prescription, the Bealer court held that Roche met its burden of delivering "accurate, clear, and unambiguous" warnings to the doctor that a patient should not become pregnant during Accutane treatment. Id. at 44-45 (citing Felix, 540 So.2d at 105).
Finally, the District of Maryland also found Accutane warnings to be adequate when it granted a motion for summary judgment in favor of Roche in 1992, in a case where a woman sued the pharmaceutical company on behalf of her son, who had been born with severe birth defects. Hunt v. Hoffmann-La Roche, 785 F.Supp. 547, 548 (D.Md.1992). In that case, plaintiff Hunt, like Debbie Banner, had chosen abstinence as her preferred form of birth control. Id. at 549. She argued that Roche's warnings were inadequate because they did not require doctors to make a pregnancy test a prerequisite to an Accutane prescription. Id. at 550.
The court rejected this argument and held that Roche's warnings were adequate under Maryland law, incorporating the learned intermediary rule. Ibid. The prescribing doctor had testified that he knew pregnancy must not occur during Accutane treatment, and that Accutane created a risk of birth defects for unborn babies. Id. at 549. Knowledge of these facts at the time of prescription was enough, and "Roche undisputably met its duty to warn [the doctor] of the risks associated with Accutane." Ibid.
In our judgment, the warnings given to Debbie Banner in 1995 were "accurate, clear, and unambiguous," and were, therefore, adequate as a matter of law. The Accutane package insert and the Patient Information/Consent and Survey Enrollment Form clearly indicated that birth defects would very likely result if an unborn child was exposed to the drug. These warnings also clearly state that a *1240 woman of child-bearing age undergoing Accutane treatment must avoid becoming pregnant.
The instructions regarding birth control during Accutane therapy were also more clear in 1995 than previous warnings had been. At the time that Ms. Banner received her prescription, the warnings in the package insert required that a patient of childbearing age use "effective contraception" for at least a month before beginning treatment and for a month after treatment ended. The only exception made was for women who had undergone a hysterectomy. As "effective contraception," Roche recommended that "two reliable forms of contraception be used simultaneously unless abstinence is the chosen method." These recommendations were reiterated in the Patient Information/Consent form, excerpted above, which both Ms. Banner and her physician signed. Incidentally, the bold print heading on that form ("Accutane must not be used by females who are pregnant or who may become pregnant while undergoing treatment") is similar to the heading referenced in Bealer, 729 F.Supp. at 45.
The warnings in Ms. Banner's case were even more clear, accurate and unambiguous than those discussed in earlier cases. Roche adequately warned both the physician and Ms. Banner that pregnancy must be avoided during Accutane treatment, and that if pregnancy occurred, the unborn child would very likely suffer severe birth defects as a result of exposure to the drug.
We recognize that in the present matter plaintiffs' argument goes beyond the parsing of the words employed in the warnings given but, rather, contends that the warning was inadequate for stating that abstinence was an appropriate means to prevent a pregnancy. Plaintiffs contend that Roche knew that abstinence was not an effective choice for women of child-bearing age who were sexually active and that its Pregnancy Prevention Program was inadequate because it included abstinence as an optional method to prevent a pregnancy.
Plaintiffs also argue that evidence they allege demonstrating that Roche's Pregnancy Prevention Program failed to reduce the pregnancy rate experienced among women receiving Accutane distinguishes this case from those earlier ones that found Roche's warnings adequate as a matter of law. At argument, plaintiffs conceded, however, that they are unable to distinguish between those women utilizing two methods of birth control and those electing abstinence. We do not find the arguments persuasive.
Courts have noted that "no harm could have been caused by failure to warn of a risk already known." Plummer v. Lederle Labs., 819 F.2d 349 (2d Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (quoting Rosburg v. MN. Mining & Mfg. Co., 181 Cal.App.3d 726, 730, 226 Cal.Rptr. 299 (1986)) (finding adequate as a matter of law the warning supplied in connection with oral polio vaccine). In our judgment, it is beyond dispute that an individual who has been previously sexually active may be unable to remain abstinent and the possibility that a woman may become pregnant following sexual relations are risks "already known." Our Product Liability Act, moreover, states that assessing the adequacy of a warning should "tak[e] into account . . . the ordinary knowledge common to [] the persons by whom the product is intended to be used. . . ." N.J.S.A. 2A:58C-4. It is certainly "ordinary knowledge" that a married woman of child-bearing age may not remain abstinent and may become pregnant after engaging in sexual relations without the use of contraception.
*1241 Roche fulfilled its duty by advising of the risks associated with Accutane therapy and advising of the need for either effective contraception or abstinence. The choice was plaintiffs' to elect. Niemiera, supra, 114 N.J. at 562, 555 A.2d 1112 (noting that "patient autonomy ... underlies our law of medical care"). We cannot conclude that Roche had a duty to withhold from Ms. Banner a medication her doctor determined was an appropriate treatment for her unless she agreed to the use of contraceptive techniques that may have violated her religious principles.
The orders under review are affirmed.
NOTES
[1] 21 CFR § 201.57(d) defines the term "contraindications" as "those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit."